Jackson, J.
In this action, brought to recover the rent of a certain tenement demised by the plaintiff to the defendants, the parties have agreed that the plaintiff shall recover only in proportion to the share which he is lawfully entitled *to hold in [*146] the premises ; and they have made a statement of facts, exhibiting the title of certain aliens, subjects of Great Britain, who claim a part of the premises under the will of John White. The only question submitted to the Court relates to the respective titles of the plaintiff and the said alien devisees ; although this comes before us in an informal manner,† yet, as it is not a mere speculative question, and we ate to suppose that the parties in interest expect to *130 be bound by the event of this suit, we have not thought it necessary to withhold the opinion which we have formed in the case.
The first objection on the part of the plaintiff to the title of the defendants is, that an alien cannot take by devise ; and that, the devise to the aliens being, therefore, void, the plaintiff, as heir at law, took the whole which was so devised. To this point the counsel cited Gilbert on Devises, 15, where it is said, that “ a devise to an alien, also to the heir of an alien, is void.”
The authority of Gilbert on this point, even if it had never been contradicted, would be much weakened by the reason he subjoins, and the case which he cites in its support. He adds, after the words before cited, “ because an alien, according to the policy of our law, can have no heir, either to inherit or take by purchase.” This applies exclusively to a devise to the heir of an alien ; and the case, which he cites, of Collingwood vs. Pace,(1) is to the same point. That case is reported in many other books, from which it appears, that the devisee was born in England, although his father was an alien ; so that the question of a devise to an alien did not arise.(2) And it is observable, that Lord Chief Baron Hale, in delivering his long and elaborate opinion in that case, after mentioning that an alien may take by purchase, proceeds to enumerate his disabilities, as, that he cannot take by descent, by courtesy, dower, or guardianship, without intimating any disability to take by devise; [*147 ] * although the case he was considering would so naturally have presented the point to his mind, if he had supposed that an alien was so disabled.(3) It is, then, apparent, that the dictum in Gilbert is not warranted by the authority cited, nor by the reason which he assigns.
On the other hand, Lord Chancellor Hardwicke, in the case of Knight vs. Duplessis, (4) expresses a strong opinion, that an alien may take by devise. He says, indeed, that he would not decide that point ; nor was it necessary for the determination of the cause then before him. But he adds, that he did not remember any doubt upon it, nor any distinction made between a grant and a devise to an alien ; and that there was no rule of law, nor any thing in the statute of wills, to prevent an alien’s taking by devise. Powel [on Devises, 315] adopts this opinion from Lord Hardwicke, and adds some other authorities tending to the same point, without mentioning that it had ever been questioned.
This opinion was also confirmed by another case, which occurred soon after, upon the same devise which was in question before Lord Hardwicke, in Knight vs. Duplessis. It appears, that the Lords of the Treasury, having received information that the devisee in that case *131 (which arose upon the will of Lord Coleraine) was an alien, caused a suit to be instituted in the Exchequer, to recover the devised premises to the King’s use ; and afterwards exhibited an information there against the supposed alien, for a discovery of the place of her birth. These suits proceeded wholly on the ground that the alien did take by the devise, but that she could not hold as against the king. The defendant demurred to so much of the information as sought to com pel this discovery ; and the demurrer was overruled. The defendant appealed to the House of Lords, where the order of the Court of Exchequer was affirmed. It is taken for granted, in the arguments of the counsel on both sides, that the defendant, admitting that she was born an alien, did take by the devise. This must also have been the opinion of both the courts ; as otherwise the King would have no interest in the question, and the information would have been dismissed.(5)
* To these authorities may be added the case of Martin [* 1481 vs. Hunter, of which a manuscript report has been shown to us by the counsel for the defendants, as lately adjudged in the Supreme Court of the United. States, in which it is expressly decided that an alien may take by devise.†
We are, therefore, perfectly satisfied, that the alien devisees in the case at bar did take the estate devised to them, to the exclusion of the heir at law.
The other objection, suggested by the plaintiff’s counsel, resolves itself into that already considered, and is decided by the opinion we have expressed. This objection is, that the aliens did not hold the estate in question at the time of the ratification of the treaty of 1794, between the United States and Great Britain ; and that, the estate having previously descended to the plaintiff as heir at law, it could not be divested by that treaty. "
This latter remark would be well founded, if all the parties claimed as heirs ; and it appears from the facts stated, that they were all sisters, or the children of sisters, and therefore they might all have claimed as heirs under our laws (the deceased having left no issue, nor any nearer kindred), if they had been citizens of the United States, and there had been no will. If John White had died intestate, as the aliens could not take by descent, the whole would have descended to the plaintiff; in which case it is clear that the treaty would not have divested his estate.
But, as the alien devisees did take the estate under the will, they were entitled to hold it against the plaintiff, and against all other *132 persons, except the Commonwealth. Not having been ousted by the Commonwealth, they did hold it accordingly at the time when the treaty was ratified ; and by that treaty the title of the Commonwealth was released and extinguished.
It is not necessary, for the determination of this cause, to decide whether the ninth article of that treaty was annulled by the late war : as, if it were so, that circumstance would not give any new [*149] rights to the plaintiff. There seems, however, *to be no doubt, that this article is one of those stipulations which are distinguished by some of the writers on the law of nations as real in their own nature ; and which are accomplished by the act of ratifi cation, so that they cannot be dissolved by any subsequent event “ Pactum, libcratorium, quo pox, remissio, out transadlo, facto est, qua jus extindum reviviscere non potest.”(6)
Neither do we see any objection to the application of the treaty, on account of the nature of the estate devised ; it being a vested remainder, instead of an estate in possession. The word lands in the treaty must be understood to mean any estate which one may hold in land, and cannot be confined to the actual possession and occupation of the soil. The treaty itself contemplates different estates in land, as within the provision of the ninth article ; and accordingly provides that the parties “ shall continue to hold, according to the nature and tenure of their respective estates and titles.” But this point also is unimportant to the plaintiff; as his claim is effectually defeated by the devise to the aliens, whether they can now hold the estate or not.†
The opinion of the Court being in favor of the defendants on the points submitted in this case, the plaintiff is entitled, according to the agreement of the parties, to recover a part of the rent demanded, in the proportion that the share devised to him bears to the whole estate. The parties will compute the amount, and enter judgment accordingly.

 The parties interested were very desirous to know their rights, and the devisee* apprehended that they could not maintain an action during the war. — Rep.

 Lev. 59.

 1 Keb. 174. — 1 Vent 416, 418.

 1 Vent 417.

 2 Ves. 360.

 Duplessis, App’t., vs. Attorney-General, 5 Brown’s P. C. 91.

 Fairfax vs. Hunter's Lessee, 7 Crunch, 630-619. — 1 Wheat. 304.— Craig vs Leslie, 3 Wheat. 563 - 589. — Craig vs. Redford, ib. 594 - 597. — Governeur’s Heirs vs Robertson. 11 Wheat. 332 — Orr vs. Hodgson, 4 Wheat. 453-460.

 Commentary of H. Cocceius on Grotius, B. 2. c. 16, § 16.

 Hughes vs. Edwards, 9 Wheat. 489 - 496. — Blight's Lessee vs. Rochester, 7 Wheat. 535-554.— Harden vs. Fisher, 1 Wheat. 300. — Jackson vs. Clark, 3 Wheat. 1.