HARVEY *vs.* MIX.

A conveyance of property, made in 1851, by a copartnership in failing circumstances, with a view to insolvency, authorizing the grantees, " to pay, from time to time, in the process of settling up our affairs, such just claims, not herein before mentioned, of other persons against us, as said vendees may deem it prudent and proper to settle," and also conditioned that such conveyance should be void on the failure of the grantees to pay certain notes therein mentioned, is in violation of the act against fraudulent conveyances, now in force, (Rev. Stat. tit. xx. § 1,) *and also of the additional act of 1828, and is therefore void.

A technical informality, in a conveyance of property in trust, is not necessarily an obstacle to the grantee's appropriating the property conveyed, to the discharge of the grantee's liabilities, agreeably to the directions, contained in the conveyance.

Where a copartnership in September 1851, conveyed certain property in trust, by an instrument, which was void, as against the creditors of the grantors, and the trustee proceeded to appropriate the proceeds of a part of the property conveyed, agreeably to the directions of the conveyance, and in the next October, one of said grantees assumed the control of said property, by agreement with the other grantees, and in December following, purchased the property conveyed, then on hand, and paid for the same ,and in May, 1852, in an action against said copartnership, the plaintiff garnisheed such purchaser as the trustee and debtor of said copartnership ; it was held, that the garnishee was not liable.

In a *scire facias*, in a process of foreign attachment, evidence is not admissible to show that a garnishee, described in the original process as the debtor of a copartnership, is the debtor of an individual member of such copartnership.

THIS was a *scire facias* in a process of foreign attachment, setting forth a judgment, obtained by the plaintiff, against Hosea B. Harvey, Samuel J. Root, William Needham, and Walter W. Scovill, partners, under the firm of Harvey, Needham, Root & Co., before the city court, for the city of New Haven, holden on the 8th day of May, 1852, in an action of book debt.

The present defendant was described in the original writ, and also in the *scire facias*, as the trustee and debtor of said copartnership.

The cause was appealed to the superior court, and tried at the term, holden in October 1855.

Upon the trial, the plaintiff claimed to have proved, that on the 1st day of September, 1851, Harvey, Needham, Root & Co., manufacturers of iron work in the city of New Haven, being in failing circumstances, and compelled, by the service of various attachments upon their property, to close their manufacturing establishment and suspend their business, and owing, among other creditors, the defendant Mix, about fifteen hundred dollars, and to John Bromham, about six hundred and fifty dollars, and to Lewis B. Judson, about two hundred and thirteen dollars, and to Peck & Harrison, about one hundred and seventy-three dollars, with a view to their insolvency, executed the following instrument in writing, and on the same day delivered the same to the grantees named therein, of whom the defendant was one.

" Whereas we, Harvey, Needham, Root & Co., of the town and county of New Haven, are indebted to divers individuals, and in consequence of the service of several attachments upon us, are greatly embarrassed in our business : and whereas we are anxious to settle as speedily as possible all just claims of our creditors, upon us, and to obtain relief from our embarrassment without unnecessary delay, now, in consideration of our indebtedness to John Bromham, Jas. T. Mix, Lewis B. Judson, and Lucius G. Peck, and Henry B. Harrison of said town, that is to say, of the several debts due from us

to them respectively, we have bargained, sold and conveyed, and hereby do bargain, sell and convey to said Bromham, Mix, Judson, Peck and Harrison, all our right, title, and interest in, and to each and all, the engines, implements, tools, machinery, lathes, finished and unfinished, stock and personal property of every description whatsoever, now situated in and about the buildings and premises now occupied by us in Artizan street, in said town, to have and to hold to the said vendees and their assigns forever, upon the conditions hereinafter stated, and we further transfer, assign and convey to said vendees upon the same condition, all notes, claims, demands and *choses* in action and rights of action, by book or otherwise, which we have and hold against any and all persons, and we hereby authorize and empower the said vendees, by their agents, the said Peck and Harrison, to finish up all unfinished lathes and other work yet unfinished, herein conveyed as aforesaid, and to sell the same when finished, and to sell and dispose of, as they may see fit, all the articles herein conveyed and to employ all necessary and suitable materials and labor in so preparing said materials for sale, so as to make them sell to good advantage. And we authorize said vendees, by their said agents, from the proceeds of said sale, to appropriate to themselves such sums as will fairly defray all expenses for material, labor and services which may from time to time be incurred by said vendees in the progress of settling up our affairs, and we further authorize them after making such appropriation, 1. To pay, settle and discharge all just claims of the different individuals, other than said vendees, who have issued attachments against us, so as to free us from all liability to them whatsoever. 2. To pay, settle, and discharge all just claims which our workmen have against us, so as to free us from all liability and responsibility to them whatsoever. 3. To pay, settle, and discharge, all just claims which said Bromham has against us, so as to free us from all liability or responsibility to him whatsoever. 4. To pay, settle, and discharge all just claims which said

Mix and Judson have against us, except four notes for $1375 each, secured by mortgage to said Mix, so as to free us from all liability or responsibility to either of them whatsoever. 5. To pay, settle, and discharge all just claims which said Peck and Harrison have against us, so as to free us from all liability or responsibility to them whatsoever.

And we further authorize them to pay, from time to time, in the progress of settling up our affairs, such just claims, not hereinbefore mentioned, of other persons against us, as said vendees may deem it prudent and proper to settle.

The condition of this instrument is such, that whereas we are legally bound to pay said Bromham a certain note, drawn by Meshurul & Harvey, for the sum of five hundred dollars payable to said Bromham or order, which note fell due and was taken up by said Bromham, August 29th, 1851, and a certain other note, dated June 20th, 1851, drawn by us, payable to said Bromham or order, three months from date, for the sum of one hundred and fifty dollars; and whereas we are indebted to the said Judson in the sum of two hundred and thirteen dollars and thirteen cents, by our note, dated June 9th, 1851, payable to his order three months from date, and in the two separate sums of four hundred and eighty, and two hundred dollars by our notes, dated July 3d and July 28th, 1851, respectively, payable to his order on demand, and in the further sum of sixty dollars for said Judson's order on T. Benedict & Son, and in the further sum of one hundred dollars for said Judson's order on J. S. Arnold, and in the further sum of three hundred and thirty dollars, due to him from us by book; and whereas, we are legally bound to pay to said Mix, two notes drawn by Meshurul & Harvey, for the sums of three hundred and forty-nine dollars and fifty-eight cents, and seven hundred dollars respectively, both payable to said Mix's order, both dated January 27th, 1851, the one payable in four, and the other six months from date; and whereas, we are indebted to said Mix by book, in the sum of four hundred and eight dollars and thirty-three cents;

and whereas, we are indebted to Peck & Harrison aforesaid, in the sum of one hundred and seventy-three dollars and two cents as nearly as the same can now be ascertained.

Now if we shall well and truly pay to said vendees and mortgagees, all said notes, and debts, and discharge all our aforesaid liabilities to them, then this bill of sale shall be void, otherwise not.

Dated at New Haven, this 1st day of September, 1851."

At the time of the execution of this instrument, the defendant held a mortgage upon a portion of the machinery, and implements of manufacture, in said establishment, which was given to him on the 27th of January, 1851, by Meshurul & Harvey, the then owners of said manufacturing establishment, to secure their four several notes for $1375, each of that date, and payable to said Mix, in one, two, three, and four years from their respective dates—which notes and mortgage were the same referred to in the aforesaid instrument of September 1st, 1851.

Upon the execution and delivery of said instrument, Sept. 1st, 1851, as aforesaid, the grantees, by their agents, Peck & Harrison, entered into possession of the property described therein, and by virtue of the powers therein granted to them, proceeded with the manufacture of the stock on hand, the sale of the manufactured goods and the collection of debts, appropriating the avails thereof in payment of the expenses of carrying on said business, and in settlement of the claims of the attaching creditors, and in partial payment of some of the workmen, who held claims against the said Harvey, Needham, Root & Co.

Said property remained under the direct management of Peck & Harrison, until on or about the 25th of Oct., 1851, when Mix, with the consent of his co-grantees, took upon himself the direction of the business and control of the property, and continued to hold the same in his hands, accounting to Peck and Harrison as agents of the grantees for his management, until about the 10th of December, 1851,

on which day, the defendant claimed to have proved, that the following agreement was entered into between the defendant and Hosea B. Harvey, one of the copartnership of Harvey, Needham, Root & Co., he acting therein, in behalf of said copartnership as the defendant claimed, but which the plaintiff denied.

" It is agreed between us that said Mix will purchase of said Harvey, certain property of his, now in Artizan street, being in the hands of mortgagees, viz : all his lathes, planer's tools and such shafting and pullies as are connected with said articles, the patterns and flasks, stock and materials and new work. Said Mix does not agree to take only such as may be at his option, but all and any that he does take will be at the appraisement of William Douglass, of Middletown, and Sylvester Colburn, of Birmingham ; if said Douglass and Colburn cannot agree upon the appraisement of any of the articles, they are to select the third person and he shall agree with them in price of said property. If the property that said Mix does take is not sufficient to pay his claims, and others that he does assume, then he is to take as much of said property as will make up the amount, after collecting what claims he chooses for work that has been done under the mortgages, besides the claim of G. W. Phipps & Co., and James Clark, both of New Haven. It is further agreed that the said Harvey shall give up all right, title and interest to said shop, and shall cease to work only at the option of said Mix, and to remove all and every kind of articles that will not belong to said Mix, but said Mix shall accommodate said Harvey, and use his best endeavors to have all transactions between said parties fair and honorable, and that all settlement between said Harvey and Mix shall be settled without any delay. Mix agrees to take the blacksmith shop and tools therein, all the machines, tools in use, foundry tools and fixtures."

It was not denied that an inventory was taken, pursuant to said agreement, and by the appraisers therein

named, of the property then in the hands of said Mix as aforesaid, which inventory amounted in the aggregate to the sum of $10,836.53, that said Mix thereupon charged himself and credited said firm on his books with the amount of said inventory; that said firm of Harvey, Needham, Root & Co., discontinued business, and were discharged by said Mix and ceased to labor for him, or have anything to do with said property, and said Mix assumed, and had the entire possession and control of the same.

The plaintiff claimed to have proved that this agreement, of December 10th, 1851, was ancillary to the prior instrument of September 1st, and designed to be in furtherance of the objects of said original instrument, and was solely to provide for the continued possession of said property by the defendant, with the same rights and the same obligations as were imposed upon all the grantees, by the aforesaid instrument of Sept. 1st; that nothing was done, under or by virtue of said agreement, to change, or in any way affect the possession of said property by the defendant, as it continued to be ever since he received it from Peck & Harrison as aforesaid, and that the defendant, in fact, continued in possession of said property, under said instrument of Sept. 1st, 1851, until after the 8th day of May, 1852, when he was copied in the *original* suit of the plaintiff against Harvey, Needham, Root & Co., which was denied by the defendant, who claimed to have proved that the same had been applied in payment of the indebtedness of Harvey, Needham, Root & Co., to the defendant, prior to the 8th day of May, 1852. But it was admitted that on the 16th day of March, 1852, the grantees, in said instrument of Sept. 1st, other than the defendant, namely, John Bromham, Lewis B. Judson, and Peck, and Harrison, executed and delivered to the defendant, an assignment of all their interest as mortgagees in the property conveyed to them by Harvey, Needham & Co. And the defendant claimed to have proved that the consideration for said assignment *to the defendant*, was the assumption by him of the debts therein mentioned, which debts were, in the case of John

Bromham, the same as that described in the condition of the instrument of Sept. 1st, 1851; and in the case of Lewis B. Judson for the amount, (about $213) due to him by Harvey, Needham, Root & Co., at the time of the execution of the instrument of Sept. 1st., and the balance for cash advanced, and materials furnished, by said Judson in the prosecution of the work, since said 1st of September; and, in the case of Peck & Harrison, for the amount of the balance due them upon their account with said property in their agency as aforesaid; and these debts, the defendant claimed to have proved, he did, in fact, upon the delivery of said assignment to him, assume, by giving his notes to said Bromham, Judson and Peck and Harrison, at three and four months, for the amount of their respective claims as aforesaid, which notes were subsequently, and on maturity, paid by him.

The defendant further claimed to have proved, that the value of the property which came into his hands as aforesaid, and which, or the avails of such portion thereof as had been disposed of, remained in his hands, and which he claimed had all been applied in part payment only of his indebtedness aforesaid, when he was copied in the writ of the plaintiff against said Harvey, Needham, Root & Co., as aforesaid, was less than the amount of the claims held by him as aforesaid, and that after charging himself with said property and avails, and crediting himself with all his individual claims against the same, including his charges for cash and materials advanced in the prosecution of the work under the instrument of Sept. 1st, 1851, and the debts assumed by him as aforesaid, at the time he was copied, there was left a balance, in his favor, of $31.31.

It was admitted that the plaintiff was a creditor of said Harvey, Needham, Root & Co., at the time of their execution of the instrument of Sept. 1st, on account of services as a workman in their establishment.

Thereupon the plaintiff claimed that the court should charge the jury that, if they found the facts as the plaintiff

claimed them to have been proved as aforesaid, said instrument of the 1st of September, 1851, was fraudulent in law, and utterly void as to creditors, and that it was so. 1. By the original act against fraudulent conveyances, and 2. By the additional act of 1828. And that if they found the instrument of 10th Dec., 1851, to have been ancillary to the instrument of Sept. 1st, 1851 aforesaid, and in furtherance of the same, that it would not relieve the said instrument, of Sept. 1st, 1851, from its original infirmity and illegality— and that if any of the property, assigned to the defendant by the instrument of Sept. 1st, 1851, over and beyond what had been covered by prior mortgages, was in the hands of the defendant on the day when he was copied in the original suit, that such property was holden to respond to the plaintiff's judgment recovered against said Harvey, Needham, Root & Co., on which judgment the present *scire facias* against the defendant was founded.

And the plaintiff further claimed that the court should charge the jury, that such would be the case, though they should also find that the defendant, prior to his having been copied as aforesaid, had advanced money and materials in the prosecution of the business authorized by said instrument of Sept. 1st, and had assumed debts due by said Harvey, Needham, Root & Co., as aforesaid, to an amount, including his own claims against said firm, greater than the value of the property received by him, under said instrument of Sept. 1st.

But the defendant claimed if the jury should find that the aforesaid claims of the defendant and of said Bromham, Judson, and Peck, and Harrison, respectively against said estate, were *bona fide* claims, and that he had assumed the payment of them, and applied the property in payment thereof, and that they amounted in the aggregate to more than the property in his hands, as aforesaid, when he was copied by the plaintiff, that no part of the property, so held by him, was liable to respond to the plaintiff, but that he had

a right to apply the same upon such indebtedness, in discharge thereof, to the extent of its value.

And the defendant further claimed, that said instrument of Sept. 1st, 1851, and said instrument of Dec. 10th, were good and valid instruments, not only as between the parties, but as against the creditors of the said firm of Harvey, Needham, Root & Co., and that the court should charge the jury, pursuant to his claims as aforesaid, if the jury should find that the same were made without any fraudulent intent.

The court thereupon charged the jury that said instrument of the 1st of September, 1851, if made by Harvey, Needham & Co., with a view to their insolvency, and while in failing circumstances, was void as against creditors.

And in respect to the other claims of the parties, the court submitted to the jury the questions, whether there was any fraud, in fact; whether the defendant Mix obtained or retained possession of the property, with any fraudulent intent to hinder, delay, or defraud the creditors of Harvey, Needham, Root & Co., or whether he so obtained, and retained, possession under the agreements of Sept. 1st, and Dec. 10th, in good faith, and for the purposes therein specified; and also the question whether the agreement of Dec. 10th was the act of the firm and binding on them; and thereupon charged them further as follows:

For the purposes of this case, I instruct you that if you shall find that there was no fraud in fact, and that the defendant, on the 8th day of May, 1852, when the copy was left in service, had in his possession no other property than such as he has admitted by his account, and had prior to that time, under and pursuant to the trust deed of Sept. 1st, 1851, or the ancillary agreement of Dec. 10, 1851, (if you shall find the last agreement to be the act of the firm,) paid expenses incurred, and debts due from said firm thereby provided for, to an amount, which, including the *bona fide* claims of the defendant against said firm, equalled the property, or avails of property, received from them under said agreement then

in his hands, he is not liable, the plaintiff is not entitled to recover in this action, and your verdict should be for the defendant.

The plaintiff, upon the trial, offered to prove that when the defendant was copied in the original suit by him against Harvey, Needham, Root & Co., the defendant had in his hands, concealed so that the same could not be attached, property belonging to Hosea B. Harvey, one of the said copartnership of Harvey, Needham, Root & Co.; but to this the defendant objected, upon the ground that the defendant was not described, either in the original process, or in the *scire facias* as the debtor of said Hosea B. Harvey, or as having his goods or effects in his hands, but was only described both in the original process and in the *scire facias*, as the debtor of the copartnership of Harvey, Needham, Root & Co., and as having in his hands the goods or effects of said copartnership. And the court sustained the objection and excluded the evidence.

The jury, having rendered a verdict in favor of the defendant, the plaintiff moved for a new trial.

*R. I. & C. R. Ingersoll*, in support of the motion.

*First*, As against the plaintiff, a creditor of Harvey, Needham, Root & Co., at the time of its execution, the instrument of September 21, 1851, was fraudulent and utterly void, and the parties to it could derive no special benefit from its provisions.

I. It was thus fraudulent and utterly void, by force of the statute of 1828, relating to fraudulent conveyances. Rev. Stat., 507.

It appears upon its face to have been executed,

1. By a party "in failing circumstances with a view to insolvency." 2. And not for the benefit of "all their creditors, in proportion to their respective claims," and 3. For the purpose of creating "a trust" for a portion of their creditors.

The four vendees are jointly constituted trustees, not only to pay certain debts of "individuals other than the vendees," as attaching creditors, workmen and others, whose claims "said vendees may deem it prudent and proper to settle," but they are also made, jointly, trustees for each other severally, in the order specified; a species of trust which has recently been under review in this court, and distinctly decided to be in violation of the statute of 1828. *Goodell* v. *Williams*, 21 Conn. R., 419.

II. This infirmity of the instrument is not relieved by the condition attached to it.

1. The statute has, in view, indirect as well as direct conveyances. The object, sought to be accomplished, is looked after, irrespective of the forms employed to conceal it. *Beers, Ex'r* v. *Lyon*, 21 Conn. R., 605. Now the purpose of this instrument was unquestionably to create the fraudulent trust already pointed out. Possession of the property was taken and its avails for a time appropriated in strict pursuance of the powers raising the trust. The parties never treated it otherwise than as a trust instrument; and the defendant, at the time he was copied, assumed it to be such, by charging the property, in his account with it, with the debt paid, and expenses incurred by himself and his co-grantees, in carrying out the trust provisions of the instrument.

2. But there is nothing in this condition to prevent the full operation of the trust. The bill of sale was to become void, on the debts to the four vendees being paid. But these debts, by its provisions, were not to be paid until after the other trusts had been executed. The condition was not to operate until after all the creditors, provided for, had been paid. Then the trust powers were to determine, in order that the surplus property, if any remained, might return to the assignors. In *Bates* v. *Coe*, 10 Conn. R., 280, a case relied on by the other side to show that a mortgage is not a conveyance, it was distinctly decided that the mortgage, then in question

did not raise a trust. Had a trust been found, it can hardly be doubted, from C. J. Daggett's opinion, that the instrument would have been held "utterly void." Upon any other principle the statute is rendered practically nugatory.

III. But independently of the statute of 1828, this instrument is fraudulent and void, as against the plaintiff, being "calculated to hinder, delay and defraud creditors." Act against fraudulent conveyances, Rev. Stat., 570. *Pettibone* v. *Stevens*, 15 Conn. R., 24. 1. It vests in the trustees a sweeping authority, "to pay from time to time in the process of settling up our affairs such just claims, not hereinbefore mentioned, of other persons against us, as said vendees may deem it prudent and proper to settle."

An unlimited discretion is thus given to the trustees to pay, or to refuse to pay, such of the creditors here mentioned, as they may please. They have not only the power to "hinder" and "delay," but wholly to refuse. An assignment, reserving to the debtor himself the right of determining which of his creditors his trustee should pay, would manifestly be invalid. Can he then confer such a power upon his assignee?

2. But the trustees are also authorized "to sell and dispose of, as they may see fit, all the articles herein conveyed." Within the scope of this authority the trustees could sell the assigned estate on credit. But a sale on credit, by a trustee, is regarded, in judgment of law, as such a "hindrance" and "delay" to creditors, that an assignment conferring upon a trustee such an authority is, upon this principle, invalid. *Nicholson* v. *Leavitt*, 2 Selden, 517.

*Secondly*, The instrument of Dec. 10, 1851, was merely subservient to—in aid of—the original fraudulent trust. It was, in the language of the court below, "ancillary" to that of Sept. 1st, 1851. Its basis, being therefore fraudulent and void as against creditors, the whole must be of the same character. *Merrill* v. *Meacham*, 5 Day R., 341. The court, in the charge to the jury, very properly assumed that the

property was received and held by the defendant, " under said agreement" of Sept. 1st, 1851. Indeed, that portion of the property, being cash received from the debts and *choses* in action, belonging to the firm at the time of their assignment, was not comprised within the provisions of this instrument of Dec. 10th, and, of course, only affected by the instrument of Sept. 1st. But in any event, the court should have charged the jury, whether the legal effect of this instrument was binding on the partnership, or not. Instead of that, it was left as a question of fact for the jury, to " find the last agreement to be the act of the firm." Each partner may undoubtedly, in the partnership name, dispose of the partnership property, for all purposes within the scope and objects of the partnership, and in the course of its trade and business. Sto. Part. § 90, 101. 1 Sw. Dig., 338.

*Thirdly*, The court charged the jury, that notwithstanding the instrument of Sept. 1st, 1851, was fraudulent and utterly void as against creditors, still, if the ' defendant, as trustee, had, before he was factorized, paid debts, provided for by that instrument, and expenses incurred in carrying out the trust, to an amount which, together with his own debt against the firm, equalled the property then in his hands, the property would not be liable to the plaintiff's attachment.

Upon this principle, the execution of a fraudulent trust cures its original infirmity, and nothing is in the way of an insolvent debtor's placing his property in the hands of a favorite trustee, for the benefit of such creditors as that trustee " may deem it proper or prudent" to pay, but the risk of its being discovered before the object is accomplished. The great objects of this statute, which are to provide a responsible trustee, who shall manage the trust under the eyes of the creditors, and to appropriate the trust property for the equal benefit of all the creditors, are thus entirely frustrated. The case in hand affords an illustration of the evil.

Decisions may be cited, protecting the trustee under a fraudulent conveyance, where he has, in good faith, appropri-

ated the proceeds of the assigned property, in payment of outside creditors, without notice of the fraud, upon the principle it would seem, that the party has repented of the fraudulent purpose.

But where the trustee himself seeks, as against an innocent creditor, to charge the property in his hands with not only the debts he has paid, and expenses he has incurred in the execution of the fraudulent trust, but also with the payment in full of himself and his co-trustees, principals in the fraudulent conveyance, there is no repenting of the fraudulent purpose. It is indeed accomplishing the very thing which the statutes and the common law say shall not be accomplished. Creditors have been " hindered" and " delayed," and their debts " avoided." *Pettibone* v. *Stevens*, 15 Conn. R., 24. *Crowninshield* v. *Kittridge*, 7 Met., 520. *Harris* v. *Sumner*, 2 Pick., 129. *Riggs* v. *Murray*, 2 John. Ch. R., 582.

The plaintiff should have been allowed to prove that the defendant, at the time he was copied in the original suit, had in his hands the property of Hosea B. Harvey, one of the copartnership debtors. The name of each member of the copartnership having been set forth in the original writ, the private estate of such member was liable to be attached by the officers, though the suit was against the copartnership. Rev. Stat., 56. Although the judgment was rendered against the copartners, the execution, issued thereon, could have been levied upon the individual property of the copartners, they having all been particularly named in the declaration. Rev. Stat., 113. If, therefore, the individual property of Harvey had not been concealed by the defendant, it could have been attached and applied to the satisfaction of the plaintiff's judgment. And when the copy of the writ, authorizing the attachment of this property, was left with the defendant, " and therein averring that the said James T. Mix had concealed in his hands the goods, effects and estate of the said defendants, so that they could not be come at to be attached," it was sufficient notice to him that all the property

which, by his concealment, he had prevented the officer from attaching in that suit, against the said defendant, would be required of him to satisfy the final judgment.

A debt, due to one member of a copartnership, cannot, it is admitted, be secured in a suit against the copartnership, where the person, owing it, is described in the factorizing process, as the debtor of all the copartners. 22 Conn. R., 248. But a " debt" is not attachable by the general law. It can only be sequestered in this peculiar manner. The factorizing process itself must therefore distinctly describe it, and by that description it is attached.

In the case of goods, the garnishee is simply made the custodian of them, until they shall be " exposed" to the officer, to be proceeded against under the general law. They are supposed to be concealed in his hands, so that actual possession cannot be taken of them by the officer. And the object of the copy, left with him by the officer, is to make him the agent of the law, to hold possession for the officer of all the goods and effects in his hands, which are liable to attachment upon the original writ.

*Baldwin* and *Blackman*, against the motion.

1. The instrument of December 10th, 1851, under which Mix became the absolute purchaser and took possession, in his own right, of the property in question, was a valid instrument, not only as between the parties, but as against the creditors of Harvey, Needham, Root & Co., to convey a perfect title to all the property mentioned in the same, to Mix the defendant.

2. All the property of Harvey, Needham, Root & Co., conveyed by these instruments, and which came into the hands of Mix, the defendant, under the same, having been *bona fide* applied, in part payment, only, of the *bona fide* claims of Mix against this firm, and such as he had assumed and paid, prior to the 8th day of May, 1852, when the copy upon the original process was left in service, Mix was no

longer the trustee or debtor, of the original defendants, because he had nothing then in his hands belonging to them. *Sanford* v. *Wheeler*, 13 Conn. R., 167. *Hutchins* v. *Sprague*, 4 New Hamp., 476. *Thomas* v. *Goodwin, &c.*, 12 Mass. R., 140.

3. By the finding of the jury, Mix, the defendant, has accounted for all the property of Harvey, Needham, Root & Co., which had come into his hands, prior to the service of the trustee process.

4. Neither the instrument of September 1, 1851, nor that of December 10, 1851, nor both together, are affected by the statute of 1828, nor by the original act against fraudulent conveyances. A mortgage is not a trust. *Bates* v. *Coe*, 10 Conn. R., 280. The consideration of the deed of September, 1851, was the indebtedness of Harvey, Needham, Root & Co., to the grantees. The case of *Goodell, et ux*, v. *Williams*, 21 Conn. R., was an absolute deed, without any condition to be void.

5. The defendant, being described only as the debtor of the firm of Harvey, Needham, Root & Co., in the original process, and in the *scire facias*, and not being described in either, as the debtor of Hosea B. Harvey, or as having his goods or effects in his hands, evidence to prove that the defendant had the goods, or effects, of said Harvey in his hands, at the time of the service of the original process, was inadmissible in a suit charging him as the debtor of the firm. *McBride, Sheldon, &c.*, v. *The Protection Ins. Co.*, 22 Conn. R., 257–8.

ELLSWORTH, J. Several questions are made in this case, which we shall not comment upon at length, as there is one, which in our view of the case, is decisive. The assignment of the 1st of September 1851, undoubtedly, is open to very serious objections, growing out of the general law of fraudulent conveyances, as well as the law of 1828. The liberty granted to the assignees, to dispose of the property as-

signed, " as they saw fit," and " pay such other debts be-
sides those named in the assignment, as the assignees may
deem it prudent and proper to settle," are provisions which
clothe the trustees with extraordinary and exceptionable
powers, which, almost of necessity, hinder and delay credit-
ors in collecting their debts.   3 Kernan, 218.   But the most
obvious objection to the assignment is, that it is in trust for
creditors, and not made for their common, and equal benefit.
Such a defect makes the assignment utterly illegal and void.
To meet this objection, it is said that the assignment is a
mortgage, and therefore a good conveyance according to the
case of *Bates* v. *Coe*, 10 Conn. R., 280.   But the doctrine
of that case does not go to this extent; and that decision
would not have been made as it was, if the court had not
held, according to their view of the deed, that it was not a
deed in trust, but merely a conditional, and *bona fide* con-
veyance; and even in this conclusion to which the court
came, some have thought that the court mistook the law and
essentially impaired the value of the statute of 1828 ; but be
that as it may, the present assignment was one, avowedly in
trust, and not being for the equal benefit of all the assignor's
creditors, is of no force or validity.

But the defendant insists that afterward, on the 10th day
of December, 1851, he bought the property in question, and
thereby, and before he was copied as the debtor of Harvey,
Needham, Root & Co., acquired a new and perfect title to
it, and so, on the 21st of September, 1852, the day he was
copied, he had nothing in his hands which belonged to Har-
vey, Needham, Root & Co., nor owed them anything for
what he had received from them.

The true character of this purchase by the defendant is
the chief question in the cause, and the ground upon which
the defendant mainly rests his defence.   If the sale was a
good one, the defence is complete ; if not, there is no defence
on the merits, and the defendant is liable to the plaintiff.
The plaintiff denies the supposed sale, and if made in fact

and in form, he denies the consideration pretended, and further he insists, that the sale, if made, was not made by Harvey, Needham, Root & Co., but by one of the partners, in his own name, and that no one of the assignees could acquire a good title by a subsequent purchase against any of the creditors of Harvey, Needham, Root & Co. The defendant takes issue upon all these questions of fact and of law. Under the charge of the court, the jury have found, that there was a *bona fide* sale to him in December, 1851, as claimed by the defendant; that he paid for the goods at their valuation, $10,836.53, which money was applied to cancel the debts of Harvey, Needham, Root & Co., and that although the business was done by Harvey, it was done for the benefit of the company, and that throughout the entire proceedings, there was no unfairness or fraud. We do not see any thing wrong in the charge of the court, on these questions. Certainly one partner could sell the partnership property for the purpose of paying company debts, and the form of the sale, whether in the company name, or in the name of the remaining and active partner, could not be material, if the sale was intended to be, and was in fact for the benefit of the company, as the jury have found it was. The company could sell their property in December, notwithstanding their ineffectual assignment of September previous; but if no sale had been made, and the title of the property had remained in Harvey, Needham, Root & Co., under the defective assignment, until the defendant had been served with the copying process, the defendant doubtless would now be liable as holding their property. Before the defendant was copied, could he not have re-delivered the property to Harvey, Needham, Root & Co.? could they not have sold it to whomsoever they pleased ? could they not have given to purchasers, or creditors, good and valid orders for its avails upon the assignees ? and if so, why could not the defendant, a *bona fide* creditor, become a purchaser of it, or apply it, under the directions of

the representative of Harvey, Needham, Root & Co., in payment and satisfaction of company debts ?

An assignment, which is defective and void because of some technical informality, is not of course an obstacle to the assignee's appropriating the property, before he is copied, in payment of the assignor's creditors, according to the directions given in the assignment, and such payments would be a good accounting, whoever might afterward sue the assignee, for the property. And this principle, we think, is quite sufficient to uphold this defence, which in its essential particulars, does not vary from that case; and the idea put forth, on the argument, that the principle does not apply where the assignment was not *bona fide*, but was *mala fide*, (if any such distinction there be,) is not material to the present case, for the jury have found, there was no moral wrong or evil intent, in making the assignment of September, 1851. If this be so, we ask, why could not the defendant make an outright purchase of the property, and thereby acquire a new and good title, if he conducted fairly, and paid for the property, a good and adequate consideration ? Nor can we perceive, if the assignment was conceded to be fraudulent in fact, why such an assignee could not abandon the assignment of a creditor, and take a new title for his good debt. In *Sanford & al* v. *Wheeler*, 13 Conn. R., 165, and *Weedon* v. *Hawes*, 10 Conn. R., 50, this court held, that a mortgage-deed, given to secure good debts and bad debts, was not entirely void, if the mortgage was not made with an actual intent to defraud, or delay, creditors; much more must it be true, in such a case, that a new and unexceptionable deed for the payment of the good debts will be sustained, if the property does not exceed their amount. In *Thomas* v. *Goodwin*, and his *Trustee*, 12 Mass., 142, the trustee, who had received property under a suspicious assignment, was copied by a creditor of the assignor, after he had applied the avails of the property, which had been in his hands, according to the directions of Goodwin, the assignor, and he was held not

liable.   The defendant set up this application of the money
as his defence, and it was sustained.  Parker, Ch. J., says;
" under  this declaration the defendant cannot be charged as
the trustee of Goodwin, notwithstanding the original trans-
action between them.   In this process, the condition of the
parties,  at the time of the service,  must  be  looked at, and
although previously to that time, the person, summoned as
trustee, may have received the property of the debtor under
circumstances which would render him liable, yet if he has
since discharged himself of all trust, by delivering back to
the debtor the property received, in such manner that it may
be attached by his creditors, or if he has paid the proceeds
to *bona fide* creditors of the principal, in satisfaction of their
just demands, so that, at the time of service of the writ, he
truly has nothing in his hands, he cannot be subjected to a
judgment."

The defendant, being copied only as the debtor of Harvey,
Needham, Root & Co., in the factorizing process, and so
sued in the *scire facias*, and not as the debtor of Hosea B.
Harvey, evidence that he was the debtor of Harvey, or had
Harvey's goods in his hands, was inadmissible, as was deci-
ded in *McBride, Sheldon & Co.* v. *The Pro. Ins. Company,* 22
Conn. R., 287–8.

We advise judgment for the defendant.

In this opinion, the other Judges, STORRS and HINMAN,
concurred.

New trial not to be granted.