## DAVID J. WAGGONER, Plaintiff in Error, *v.* FRANCIS B. COOLEY *et al.*, Defendants in Error.

### ERROR TO FULTON.

The admissions of a person in possession, claiming property, are proper testimony as against his own title. An exception to this rule arises, under the statute, in the trial of right of property, which excludes the testimony of the defendant in execution.

As between vendor and vendee, a fraudulent sale may be good, but void as between each of them and creditors.

A creditor, in failing circumstances, has not the right to transfer his assets to an agent, with power to sell, and prefer creditors.

Creditors who, to secure a debt, take title by purchase, from a fraudulent vendee, with knowledge of his title, take only such title as their vendor had, and other creditors may assail the whole transaction for fraud.

THIS was an action of trover, commenced by the defendants in error, against the plaintiff in error, in the Fulton Circuit Court, to recover damages for the conversion of certain lots of corn, oats, wheat, &c.

The defendants filed four pleas, to-wit:

1st. That he was a deputy sheriff of Fulton county, and as such, he received six several writs of attachment, set out in the plea, against one Abraham Stevenson, issued from Fulton county, by virtue of which he levied upon and took the property described in the declaration ; and avers that the property belonged to the said Abraham Stevenson, the defendant in the attachments.

2nd. The same allegations as the first plea, except that instead of setting forth six writs, it only alleges that one writ in favor of Samuel C. Davis was received by him, which writ is one of the six described in the first plea.

3rd. That the property mentioned in the declaration was the property of Abraham Stevenson, and not the plaintiffs'.

4th. That the property was not the plaintiffs', but was the property of one Horatio J. Benton.

The plaintiffs in error replied to the 1st, 2nd and 3rd pleas, denying that the property was Stevenson's, and averred that it was the property of the plaintiffs, with conclusion to the country, to which *similiter* was added ; and to the 4th plea, that the property was not Benton's but was the plaintiff's, on which issue was joined.

A jury was impanneled, which found the issues for the plaintiffs below. Motion was made for a new trial, and overruled by the court, and judgment was rendered against the plaintiff in error, upon the verdict of the jury.

On the trial of the cause it was proven that the property in controversy, together with a stock of merchandize, was, prior

to the 9th day of May, 1854, the property of Abraham Stevenson, who was conducting a business in the town of Ipava, Fulton county, and that becoming embarrassed, he, on that day, transferred and sold the whole of his property fraudulently to his clerk, Horatio J. Benton, for the purpose of avoiding the payment of his debts, and at the same time he transferred, for the same purpose, all the indebtedness due him to his brother, John Stevenson. It was also proven that Benton was a party in the fraudulent object. It was proven that Abraham Stevenson then absconded with all his ready money, and was pursued by a creditor who arrested him in Ohio, and thereupon he settled with the pursuing creditor by paying his money on hand, and returned to Fulton county. It was further proven that Stevenson conferred no authority on Benton to pay his debts, or dispose of the property for his (Stevenson's) benefit, but that Benton was instructed not to pay the creditors; and that no agency was created as to the property in controversy.

It was then proven that one S. H. Gilbert, as the agent of the plaintiffs who resided in Chicago, came to Fulton county, after the fraudulent transfer to Benton, while Stevenson was absent from the State, and Benton was in possession of the stock of goods and the property in controversy, having charge of a debt due the plaintiffs of about $840, and a writ of attachment issued from the court of Common Pleas for Cook county, in favor of the plaintiffs against the effects of Abraham Stevenson, to make their debt; that the agent, Gilbert, placed the writ from Cook county in the hands of the sheriff of Fulton county, who, at the direction of the plaintiffs' agent, levied on the stock of goods as the property of Stevenson, and was about proceeding to levy on the property in controversy, when Gilbert and Benton made an arrangement. This arrangement was that the stock of goods should be released from the levy, and the property in controversy was to be sold and transferred by Benton to the plaintiffs, for which the debt of the plaintiffs against Abraham Stevenson was to be transferred to Benton. It was further proven that this arrangement was consummated in the presence of the sheriff of Fulton county, the levy released and the writ returned, the property in controversy sold, and in part delivered, and the indebtedness on Stevenson transferred to Benton.

It was further proven that directly after the arrangement between Benton and plaintiffs' agent, that the writs of attachment mentioned in the first and second pleas, came to the hands of the defendant, as deputy sheriff, and by virtue of the writs he levied on and took the property in controversy as the property of Abraham Stevenson. At that time a part of the produce had been removed from where Stevenson left it, and stored in

the plaintiff's name, and the rest remained in the original places of deposit.

The defendant then produced Joseph Dyckes as a witness, and proved by him that he was sheriff of Fulton county, and as such had·charge of the plaintiffs' writ of attachment from Chicago, and was present and heard the negotiation by which Benton sold the property in question to the plaintiffs, and while Benton was in possession thereof, by which they claimed the title to the property. After making such proof, the defendant proposed the following question: *What did Benton say with regard to the title to the property in controversy, while he was in possession of the same?* To which the plaintiffs objected, and the court sustained the objection, to which the defendant excepted.

The defendant then proved by Dyckes that *Gilbert claimed* that the transfer by Stevenson to Benton *was a fraud and void;* that the property still belonged to Stevenson; that Gilbert directed the witness to make the levy, then compromised with Benton and released the levy, *when the court,* on motion of the plaintiffs, *excluded the evidence from the jury,* to which the defendant excepted.

The several writs of attachment, with the returns thereon, were offered in evidence, which was all the evidence.

The plaintiffs asked the court to give the following instructions to the jury, to wit:

The court is asked to instruct the jury—

1st. That if they believe, from the evidence, that Stevenson was indebted to the plaintiffs, and that their agent purchased the property in the declaration mentioned, of Benton, and that Benton was in possession thereof at the time of such purchase, by purchase from Stevenson, and that said agent paid for said property in indebtedness on Stevenson, and received said property in payment thereof, and received the possession of said property, and that defendant afterwards took said property, they should find for plaintiffs.

2nd. That if the jury believe, from the evidence, that Stevenson was indebted to the plaintiffs, and the goods and property in plaintiffs' declaration were received in payment of such indebtedness from Benton, (he being in possession of said goods,) and received into their possession by their agent before said property was taken by defendant, the sale to the plaintiffs was a legal sale, and that it is immaterial whether the sale by Stevenson to Benton was fraudulent or not, or whether the plaintiffs had notice of such fraudulent sale between said Benton and Stevenson.

3rd. That if they believe, from the evidence, that the sale

16

of the property specified in plaintiffs' declaration was sold to Benton by Stevenson, and that Benton gave his notes therefor, and that such sale was not a fraudulent one, then the property passed to Benton, and a sale by him to plaintiffs would vest the property in said plaintiffs; and that to constitute a fraudulent sale to Benton, they must believe that both Benton and Stevenson intended it to be a fraudulent sale.

4th. That if Benton bought the property and gave his notes therefor in good faith, without any intention to defraud any one, then the sale is a good one, even if Stevenson did intend it to be fraudulent.

5th. That if the jury believe, from the evidence, that Stevenson sold the property to Benton in good faith, and took his notes therefor, the sale is not fraudulent; even if Benton intended to defraud Stevenson or others, and that both vendor and vendee must participate in a fraudulent intent in order to make the sale fraudulent.

6th. That in this case the plaintiffs are not to be affected by a fraudulent sale between Benton and Stevenson, even if there was one, unless they had some participation in said fraudulent sale.

7th. That where two creditors have demands against one debtor, it is competent for such debtor to prefer either creditor and pay him, even if the other creditor should lose his debt thereby; and in such case the creditor who first obtained payment of his debt, in property or otherwise, is entitled to retain the same if possession is delivered.

8th. That if the jury believe, from the evidence, that Stevenson fraudulently sold and conveyed the property described, and delivered possession thereof to Benton, and gave him the entire control of the property, still a sale by said Benton to a creditor of Stevenson in payment of Stevenson's indebtedness to such creditor, will vest the right of the property in such creditor, and that his title thereto cannot be divested by a subsequent attaching creditor by reason of such fraudulent sale.

9th. That where one person gives the entire control of goods and chattels to another and authorizes him to dispose of them as he pleases, or fraudulently sells them to such person and delivers the possession to such fraudulent vendee, any sale made by such person to whom such goods are delivered, will be valid, and he will be treated as the agent of the first person, and such first person will be bound by his acts, and all persons claiming under him.

And the defendant asked the court to give the following instructions to the jury:

1st. If the jury believe, from the evidence, that the sale of

the property, the title to which is in controversy, in this suit made by Abraham Stevenson to H. J. Benton, was made for the purpose of hindering, delaying or defrauding the creditors of said Stevenson in the collection of their demands against Stevenson, and that Benton participated in the said fraudulent intent of Stevenson in making his, said Benton's, purchase of the said property; and if the plaintiffs only have shown a title to said property acquired through Benton—and if the jury believe, from the evidence, that said plaintiffs purchased from Benton, with a full knowledge of the said fraudulent contract between Stevenson and Benton, then the plaintiffs have shown no better title to said property as against the rights of Stevenson's other creditors than Benton had thereto at the time when he sold the same to the plaintiffs.

2nd. If the jury believe, from the evidence, that the contract between Stevenson and Benton was of the fraudulent character mentioned in the above instruction, then the pretended sale between Stevenson and Benton would be void as against Stevenson's creditors, and such creditors could attach and hold said property in the hands of Benton for the satisfaction of their demands; and in like manner said creditors could attach and hold said property in the hands of the plaintiffs, if the plaintiffs only purchased said property of Benton, and before and at the time of their purchase had full knowledge of the void character of said Benton's title on account of such fraud.

3rd. If property is conveyed for the purpose of hindering, delaying or defrauding the creditors of the seller, and such property is attached by such creditors, such property is considered as still the property of the seller in favor of his creditors' rights.

4th. If the jury believe, from the evidence, that all the title to the wheat and barrels claimed by plaintiffs, which they have shown was derived from Benton, and that Benton had no title to the wheat except what he obtained from Stevenson; and if they further believe that Stevenson never sold this wheat to Benton, then the jury must not assess any damages against the defendant for said wheat.

And the court gave the 4th in number, and refused to give the 1st, 2nd and 3rd,—to which decision of the court in refusing said instructions the defendant then and there excepted.

This cause was heard before WEAD, Judge, and a jury, at February term, 1855. Verdict and judgment for the plaintiff in the court below.

GOUDY and JUDD, for Plaintiff in Error.

WM. KELLOGG, for Defendants in Error.

SCATES, C. J. With an exception excluding by statute, a defendant in execution from testifying on the trial of the right of property levied on, by the general principles of law, the admissions of a person in possession claiming property, are admissible in evidence against his own title, and we are not able to discover any ground of objection upon which Benton's statements on this point should have been excluded, as the whole tenor of the evidence tended to show that defendants deduced title [through him. *Jackson ex dem. Titus et al.* v. *Myers*, 11 Wend. R. 533 ; *Crary* v. *Sprague et al.*, 12 Wend. R. 41.

The acts and declarations of Gilbert, his agency for defendants being proved, were admissible at least to show notice of the alleged fraudulent sale, under which defendants were alleged to claim.

The first, second, sixth, eighth and ninth instructions given for defendants here, are erroneous ; and the first, second and third instructions asked by plaintiff here, were improperly refused.

The error seems to have arisen out of a mistaken view of the rights and powers of a fraudulent vendee. The sale may be and is good as between vendor and vendee, but void as between each of them and creditors. As to them, it is still the property of vendor, and so creditors may attach or levy upon it.

This is the general rule, and under it the law will recognize, favor and secure the vigilant, as in cases of insolvency, where diligence may give priority by suit.

But the case is not placed upon these familiar principles. We, on the contrary, understand the instructions, as assuming the ground, that although the sale is void for the purpose of transferring the title to the vendee, it is nevertheless a valid appointment of an agent with power to sell to and prefer the creditors of the vendor. No authority to sustain this position has been shown. The power of a failing, or insolvent debtor, to prefer and secure a creditor, has not been transferred to, or sanctioned in a fraudulent vendee, by any principle or decision known to us, when drawn in question or litigated between the creditors themselves.

The case of *Thomas* v. *Goodwin, trustee*, 12 Mass. R. 140, referred to for this position, does not sustain it. The proceeding was a trustee process against the fraudulent vendee, with a view to charge him with the value of the property. To discharge himself from liability, he proved that he had paid, on the orders of the debtor, the full value over to creditors. An executor of his own wrong may discharge himself from further liability by payment of intestate's debts in good faith, nor is it apparent why a fraudulent vendee may not discharge himself from further

liability, after having paid away the proceeds or value of property, when the proceeding seeks to charge him with the value again. But when the proceeding is against the property itself, or the proceeds in the hands of the fraudulent vendee, I consider the aspect of the question as wholly changed. He has no right to dictate who shall, and who shall not be paid, or preferred. His position and possession of the property is one of self protection merely, and not one of agency or preference.

It may be here, that Benton has, by a delivery of the property over to a creditor of Stevenson, discharged himself from any further liability for it, or its value, and yet the receiver of it from him, and under his contracts and sales, has acquired no title to it, or preference over Stevenson's other creditors. Had defendants [bought the property of Stevenson, they then might have raised the question of title by purchase and preference.

*Burnell et al.* v. *Robertson*, 5 Gil. R. 282 is no authority for defendants, for there both sales were made by competent authority, the one by the owner, without delivery, the other by levy of attachment on the property, which created a valid lien, overreaching the former sale without delivery.

Had the defendants proceeded with their attachments, they had a lien, and may have perfected title by sale, and it may be a preference to the full value of the goods attached. But when they abandon that diligence, and consent to take title by purchase of the fraudulent vendee, with a full knowledge of his fraudulent title ; the fact that they are creditors of the fraudulent vendor cannot purge and purify the transaction of its fraudulent character towards other creditors, and make that valid which was before void. They waive their vantage ground, and take what title their vendor may have, as against other creditors, equally with themselves entitled to assail the transaction for fraud. See *Jennings* v. *Gage et al.*, 13 Ill. R. 610 ; *Saltus* v. *Everett*, 20 Wend. R. 275 ; *Swett et al.* v. *Brown, trustee*, 5 Pick. R. 178 ; *Caldwell* v. *Williams et al.*, 1 Carter R. 405 ; 2 Kent Com. 324.

Had the fraud been perpetrated upon the vendor, a *bona fide* purchaser or bailee, who receives the goods on a preëxisting debt, may hold them against the defrauded vendor, as is held in *Root* v. *French*, 13 Wend. R. 570, and *ante*, 11 Wend. R. 533 ; *Powell et al.* v. *Jeffries et al.*, 4 Scam. R. 387. Every advantage that a suitor may obtain by his diligence, is sustainable, even to the levy of an attachment between the execution and filing a deed for record. *Cushing* v. *Hurd, Jr.*, 4 Pick. R. 253. But a creditor has no right to take the goods without suit. *Osborne* v. *Moss*, 7 John. R. 164. Nor is his title improved by a purchase from one who had no right to sell, for the fact of

his being a creditor will not confer the right or power. And however free his own purchase may be from fraud, he must answer for the fraud which taints and avoids his vendor's purchase, when that fraud is known to him, although he was no party to that fraud.

The instructions given and those refused seemed to proceed upon the ground that the fraudulent vendee had power to sell to a creditor of the vendor, and that he would acquire a valid title against the claims of other creditors, notwithstanding the first sale was void as to them all, for fraud, and that fraud known to the second purchaser. The principle is unsustained by authority and we are not able to give it our sanction.

Judgment reversed and cause remanded for a new trial.

*Judgment reversed.*