## JEWETT & ROOT

*v.*

## JOHN COOK.

1. FRAUDULENT CONVEYANCE—*title of one derived through.* If a sale of
goods is made to defraud creditors, and is only colorable, and the purchaser
makes a pretended sale, which is not *bona fide,* and the latter purchaser sells
the same goods to an attaching creditor of the original owner, in payment
of his debt, taking his note for the balance of the price, and the attachment
is dismissed, the goods will be liable to attachment by any other creditor
of the original owner, if the first attaching creditor knew of the fraudulent
character of the first sales under which he derived his title. His purchase
will be tainted with the fraud, although he may have paid a valuable con-
sideration to secure his own debt.

2. SAME—*must be proved.* A sale of goods by a debtor, in the absence
of proof to the contrary, will be presumed to be *bona fide* and honest, and
it will also be presumed that the price paid was the full value of the prop-
erty.

3. SAME—*evidence of.* The fact that a party purchases goods for $1000,
and soon after sells them to another for $800, though a circumstance against
the good faith of the transaction, is not sufficient evidence to defeat the sale
or establish fraud.

4. SAME—*affidavit for attachment as evidence against creditor purchasing
from vendee.* Where a creditor made an affidavit for an attachment, in
which he alleged that his debtor had fraudulently sold his goods, and
attached the same, but afterwards purchased the same goods from a second
purchaser, to secure his debt, and gave his note for the excess of the price
above his debt, and they were again attached by another creditor: *Held,*
that the purchaser's affidavit, though evidence against him, was not suffi-
cient to establish the fraudulent character of the sale, as against him; but
if the fraud were shown otherwise, it would show he had notice of the fact.

5. EVIDENCE—*declarations of vendor to impeach sale.* The admissions
and declarations of the vendor of goods, and those of his wife, made after
the sale, are not admissible as evidence to show that the sale was made to

defraud his creditors, and thus impeach the title of his vendee, or one succeeding to his rights by purchase.

6.  PROMISSORY NOTE—*possession, evidence of ownership.*  Where a person, other than the payee, has the possession of a promissory note, it will not be presumed, in the absence of proof, that he came by it dishonestly, or did not pay value for it, but the possession is *prima facie* evidence of ownership.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

Mr. J. L. RAY, and Mr. G. W. GERE, for the appellants.

Messrs. LANGLEY & KNIGHT, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The appellants, on the 16th day of February, 1875, brought an action of attachment, in the circuit court of Champaign county, against Wm. M. West, to recover a debt of $321.59. The writ was levied upon a stock of hardware in the possession of appellee.

Appellee came in under the statute, claimed to own the property attached, and interpleaded, upon which issue was taken. A trial was had without the intervention of a jury, which resulted in a judgment in favor of appellee for the property attached.

The only question that arises upon the record is, whether the finding of the court in favor of appellee, the claimant of the property, is sustained by the evidence.

The goods in question originally belonged to the defendant in the attachment, West, who was in trade in Tolono. West sold the goods, but at what time does not appear from the evidence, to a Mrs. Mary Stark, for $1000, and took her note in payment, due at a future day. Mrs. Stark took possession of the goods under her purchase.

On the 15th day of January, 1875. appellee, Cook, sued out an attachment against West for a debt of $330. alleging in his affidavit that West had fraudulently sold and conveyed his property, consisting of a stock of hardware, for the purpose of hindering and delaying his creditors.

On the day following, the writ of attachment was levied on the hardware in question, which was then in the possession of Mrs. Stark. The sheriff took possession of the goods, and retained them until the 27th day of January, 1875, when one Baldwin, the father-in-law of West, as appears from the evidence, purchased the goods of Mrs. Stark, and gave her in payment the note of $1000, which she had given West for the goods, $50 in cash, and allowed her to retain $30 she had received on a sale of a portion of the goods.

On the same day that Baldwin purchased of Mrs. Stark he sold the goods to Cook for $800—$300 in Cook's account against West, for which Cook had attached the goods, and Cook's note for $500, due in ninety days. At the same time Cook released his attachment and took possession of the goods under the purchase, and retained them until they were attached by appellants on the 16th day of February following.

If the sale of the goods from West to Mrs. Stark was only colorable, and fraudulent, and that fact was known to appellee, and Baldwin was not a *bona fide* purchaser, then appellee's purchase would be tainted with fraud, and he could not hold the property as against the other creditors of West, although he was a *bona fide* creditor himself, and purchased the goods to secure his own debt. *Waggoner* v. *Cooley*, 17 Ill. 239.

But this record fails to show that the sale to Mrs. Stark, or the subsequent sale to Baldwin, was fraudulent.

The evidence does not disclose that West was insolvent, or that he owed any debts except the one to appellants and another to appellee, unless the admissions of West and his wife are admissible, and we are aware of no rule under which such evidence can be introduced on the trial of the issue between appellants and appellee.

The declarations of the vendor of personal property, made after he has transferred the property, can not be introduced to impeach the title of the vendee.

The evidence does not show what the goods were worth when purchased by Mrs. Stark. She gave her note for $1000 for the

goods, and, in the absence of proof, it is to be presumed that was the full value of the goods.

This sale was followed by possession, and unless there was evidence to impeach it, it will be presumed to have been honest.

After she had acquired the possession of the goods under her purchase, they were attached by appellee as the property of West; then Baldwin appears; he holds the note of Mrs. Stark, given for the goods; how, or of whom he obtained it, or what he paid for it, is not shown. We can not, however, presume he obtained the note dishonestly, without proof, neither can it be presumed he did not pay value for, or did not own it; but, on the other hand, the possession of the note was *prima facie* evidence of ownership.

With this note and fifty dollars in cash he purchased the goods of Mrs. Stark. It may be that this purchase was not made in good faith, but the rule is so well settled that fraud is never to be presumed, but must always be proven, that the citation of authorities to sustain it is unnecessary.

After he had acquired title of Mrs. Stark, he sold the goods to appellee; this sale was accompanied and followed by possession.

It is, however, urged that Baldwin purchased for $1000, and sold to appellee for $800. While this fact might be a circumstance against the good faith of the transaction, it is not enough to defeat the honesty of the sale. It is not disputed that appellee had an honest debt of $300 against West, and that he gave this debt and his own note of $500 for the goods. Nor do we understand that it is claimed that appellee has been actuated by any dishonest purpose or motive in the transaction, but his purpose was to secure an honest debt. At the time he made the purchase, it appears he had no knowledge whatever of the existence of appellants' debt, or any other debt, against West.

If the sale from West to Mrs. Stark, and from her to Baldwin, was fraudulent, the fact might have been readily established by calling these parties on the stand; had this been

done and the sales proven fraudulent, then the affidavit filed by appellee, upon which his writ of attachment issued against the property of West, would have been evidence that he had, notice of the fraud, but we are not prepared to hold that the affidavit alone is enough to conclude appellee as to the character of the sale.

The fact, alone, that a creditor files an affidavit, upon which an attachment issues, that the debtor has fraudulently conveyed his property, can not be regarded proof of the fraud. It might be evidence that the creditor believed, at the time, the transaction was fraudulent, or, if the fraud was subsequently proven, that he had notice that the transfer was fraudulent.

We are not prepared to say, therefore, that the judgment of the court was not sustained by the evidence.

The judgment will be affirmed.

*Judgment affirmed.*