Beach and Keefer v. Miller.

## THOMAS S. BEACH AND GEORGE G. KEEFER
### V.
## JOSEPH T. MILLER.

*Trespass against Sheriff—Corporations—Sale to Directors and Stockholder to Pay Debt—Lease of Rooms—Authority of President—Fraud—Evidence—Instructions.*

1. A director or stockholder of a corporation may deal with it on the same terms and like manner as other persons.

2. The transfer by a corporation in failing circumstances, of personal property in payment of a *bona fide* debt is not evidence of fraud.

3. In an action of trespass by a director and stockholder in a corporation, against the Sheriff and his deputy, who had seized certain personal property under an execution against the corporation, said property when so seized being claimed by and in the possession of the plaintiff, it is *held:* That the conveyance of the property by the corporation to the plaintiff, in payment of a *bona fide* debt, was valid and without fraud; that the evidence shows authority in the president of the corporation to make the sale and to lease to the plaintiff certain rooms in its warehouse; that his open possession of such rooms for the storage of said property was effectual to protect it from an execution against the corporation; that the court properly sustained exceptions to certain questions and an offer of evidence touching the financial circumstances of the corporation at the time of said sale; and that the court properly refused an instruction which was not based on any evidence admitted or offered in the case.

[Opinion filed May 27, 1887.]

APPEAL from the Circuit Court of Whiteside County; the Hon. JOHN V. EUSTACE, Judge, presiding.

In 1881 The Rock River Packing Company was organized with a capital stock of $16,000, of which Joseph T. Miller, (appellee) subscribed and paid for $5,000, he at the same time becoming a director of the corporation. In 1884 the capital stock was increased to $25,000 of which said Miller took and paid for $2,800. The corporation soon after its organization pro-vided itself with an extensive factory and warehouse at Ster-ling, where it carried on the business of canning fruits, vege-tables and meats. During the spring and summer of 1885, the corporation being in need of money to carry on its business, borrowed of said Miller various sums of money amounting in all to $2,000, which money was used by the corporation in the conducting of its business. To secure Miller for these loans, the corporation issued to him three judgment notes, one for $500 on the 30th day of May, 1885, one for $500 on the 6th day of July, 1885, and one for $1,000 on the 17th day of August, 1885. All of said notes were due and unpaid on the 16th day of October, 1885. On the 16th day of October, 1885, the corporation sold to said Miller about 80,000 of sur-plus cans, and a small quantity of tin for $1,877, to apply on these notes. At the time the above property was sold to Miller the corporation was carrying on its usual business, and so con-tinued until its property was seized by the appellants. At the time of the sale to Miller, the corporation was the owner of its factory and warehouse subject to a mortgage, securing a bond in the penal sum of $7,000, indemnifying appellee and others as sureties on the company's note for $5,500. There was also 28,880 cans, besides quantities of material and furniture used in the canning business. On the 16th day of October, 1885, Miller, after his purchase from the company, leased from the company two small store rooms of the warehouse where the cans then were. On the 17th day of October, Ingersoll, the president of the corporation, caused his employes to take out of the rooms leased to Miller, all property belonging to the company and turned over to Miller the possession of the

rooms and the property therein, and delivered him the keys. Miller nailed up and fastened the doors of these rooms communicating with the other parts of the warehouse, and placed new locks upon the other doors. Miller remained in the open and exclusive possession of the rooms and cans until the seizure by the appellants on or about the 31st of October, 1885.

The appellants, Thomas S. Beach as Sheriff and George G. Keefer as his deputy, made the seizure under an execution in favor of Blatchford & Company, issued on a judgment rendered against the Rock River Packing Company, on a judgment note given by said company on the 17th day of October, 1885, to Blatchford & Company. Miller notified Keefer before the seizure that he owned the cans, and had possession of the premises. The premises were broken into by the appellants and the goods seized and sold under the Blatchford & Company execution. The appellee brought this suit against the appellants, for the breaking and entering his premises, seizing, taking and selling his property. Appellants filed plea of the general issue and special pleas of justification. Replications filed. Trial, verdict and judgment for appellee for the sum of $1,996.41, from which this appeal is taken. Various errors are assigned.

Messrs. WEIGLEY, BULKLEY & GRAY, for appellants.

Messrs. BENNETT & GREEN, for appellee.

WELCH, J. This was an action of trespass with counts of *quare clausum fregit* and *de bonis asportatis* joined. Plea of the general issue and special pleas of justification, to which replications were filed. Under the issues the appellee, to make out a *prima facie* case, was only required to prove that he was in possession of the premises and goods in question, claiming the same as owner, and that the appellants interfered therewith. The appellants were then obliged to show their authority to attack appellee's possession, otherwise they would be left in the position of mere wrong-doers.

It is insisted by counsel for appellants, that appellee could not purchase the property of the corporation, of which he was a director. This is not an open question in this State. In Merrick v. Peru Coal Co., 61 Ill. 472, Justice Walker says: "There is no rule of law which prohibits a shareholder from dealing with the company, or from suing or being sued by it. It then follows that appellant, notwithstanding he was the president of the company, had the right, with his own funds, to purchase these notes and drafts, and when he did so he succeeded to all of the rights of the holders." In Harts v. Brown, 77 Ill. 226, Justice Walker says: "We have never known it questioned, that a director or stockholder may trade with, borrow from, or loan money to the company of which he is a member, on the same terms and in like manner as other persons." The same doctrine is held in Twin Lick Oil Co. v. Marbury, 91 U. S. 587; Buell v. Buckingham, 16 Iowa, 284; Whitewell v. Warner, 20 Vt. 425; Sargent v. Webster, 13 Met. 497; Haywood v. Pilgrim Society, 21 Pick. 270; Ellis v. Boston, Hart. & Erie R. R. Co., 107 Mass. 1; Angell & Ames on Corporations, Sec. 233. Appellants' counsel have referred us to a large number of authorities, as sustaining their position—none from this State, in conflict with the authorities referred to *supra*. Most of the authorities referred to were suits brought by the stockholders against directors, and were generally proceedings in equity. We are bound by the rule announced by our Supreme Court on this question.

It is next insisted by counsel for appellants, that the president of a corporation can not lease its estate or sell its personal property outside of the usual business of said corporation without the authority of its board of directors. Ingersoll, who was president and secretary of this corporation, who made the sale and lease to appellee, states on cross-examination by the appellants: "The directors instructed me to sell the goods and issue the lease." If this is true, it disposes of the question. It shows authority from the corporation to make the sale and lease. We are further of the opinion that the sale and lease, as shown by the evidence in this case, was not outside of the usual business of such corporation.

Beach and Keefer v. Miller.

It is further insisted by counsel for appellants, that a director of a corporation can not obtain and hold possession of its real estate and personal property situated thereon, as against the corporation or its creditors. If, as we have held, the appellee was not debarred from the right to contract with the corporation, by reason of his being a director, and he in pursuance of such right becomes the purchaser of personal property from the corporation, and the corporation permits him to have the exclusive and open possession of some rooms in its warehouse for the storage of such property, his possession would be effectual to protect his personal property situated therein, against an execution creditor of the corporation.

It is further insisted by counsel for appellants, that the court erred in sustaining exceptions to questions asked by counsel for appellants, and in sustaining exceptions to the offer of proof by appellants on the question of the financial condition of the corporation, etc. The court said in passing on the exceptions: "That if it was true this company was in insolvent circumstances, and so about to fail, and that Miller knew it, if he had a *bona fide* debt against the corporation, and the corporation had the right to pay that debt, then if extended to all the property, their doing so would be no evidence of fraud. It must be fraud in reference to this alleged sale to Miller. This is the only fraud we can inquire into. If counsel states any circumstances that they expect to prove, or any train of circumstances constituting fraud, it is the duty of the court to pass upon the question as to whether the facts, as they appear, are admissible or not. A claim now made by Mr. Johnson is that at the time of this alleged sale, this company was in failing circumstances, and that the plaintiff knew it. A man or corporation in failing circumstances has a right to transfer its property in payment of debts, so that would be no evidence of fraud. We hold that there was no error in the ruling of the court upon the question of solvency, or of fraud. There was no fact or circumstance stated or offered to which exceptions were sustained that tended to show fraud in this sale."

" A sale of goods by a debtor in the absence of proof to the contrary will be presumed to be honest, and it will also be

presumed the price paid was the full value of the property."
Jewett v. Cook, 81 Ill. 260; Waddams v. Humphrey, 22 Ill.
661; Wood v. Shaw, 29 Ill. 444; McConnell v. Wilcox, 1 Scam.
344. In this case, appellee does not have to rely on this pre-
sumption. The evidence clearly shows that the property sold
to appellee was sold at its full value and that the proceeds of
the sale was applied on a *bona fide* debt due from the corpora-
tion to him.

It is also insisted the court erred in refusing to give the
13th instruction as asked. There was no evidence on which
to predicate such instruction, and no evidence offered upon
which to base it. We find no error in the rulings of the
court. Substantial justice has been done.

*Judgment affirmed.*