William Payne, Appellant, v. Bruce L. Brownlee et al., Jennie McNamara and J. W. Duncan, Appellees.

## Gen. No. 6,037.

1. EXECUTION, § 64*—*how right of priority of lien lost.* Any act of an execution creditor which diverts such execution from its proper purpose renders it dormant and inoperative as against other creditors and clothes them with priority as against it, since the object of an execution is to obtain satisfaction of the judgment on which it issues.

2. EXECUTION, § 64*—*how execution rendered presumptively fraudulent as to junior executions and writs.* An attempt to make use of an execution for the purpose of obtaining merely security for the payment of the debt, although without fraudulent intent, renders the execution presumptively fraudulent as to junior executions and writs.

3. EXECUTION, § 70*—*when right to priority of lien not waived.* In a bill to foreclose a mortgage of personal property wherein the relative priority of an execution creditor over junior incumbrancers was involved, and where it appeared that an officer having the execution demanded and took security therefor, the execution creditor *held* not to have waived her priority, it appearing that such action of the officer was without the knowledge or consent of such creditor, but on the contrary he insisted on a levy thereof being made and the debt collected through its instrumentality.

4. CHATTEL MORTGAGES, § 85*—*when mortgagee having no knowledge of fraud of mortgagor obtains legal title.* One whose title to personal property was obtained by fraud can give a chattel mortgage thereof and transfer a good legal title thereby to a mortgagee who is not a party to and has no knowledge of the fraud, and who takes the mortgage in good faith.

5. CHATTEL MORTGAGES, § 156*—*when not entitled to priority over lien of execution.* In a bill to foreclose a chattel mortgage wherein the relative priority of liens senior to such mortgage was involved, where the lien of an execution was held to be first in priority, a decree holding the lien of a chattel mortgage which was valid, and prior in time to the lien of the mortgage sought to be foreclosed to be the second in order of priority, *held* proper.

6. EXECUTION, § 67*—*when entitled to priority over chattel mortgage.* In a bill to foreclose a chattel mortgage wherein the relative priority of liens senior to such mortgage was involved, a decree holding that the lien of an execution was first in priority *held* correct, where it appeared that the lien of such execution was first in point

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of time and where there was no evidence of a waiver of such priority.

7. CHATTEL MORTGAGES, § 87*—*when fraudulent as to creditors.* A chattel mortgage given by one to whom property has been transferred in fraud of creditors is invalid as being in fraud of creditors where the mortgagee is a party to the fraud or has knowledge of the fraudulent purpose with which such property was transferred to such mortgagor.

8. SALES, § 187*—*when manual possession of crops by purchaser not necessary.* A transfer of title to an interest in growing corn is complete without a taking of manual possession thereof by the transferee.

Appeal from the Circuit Court of Warren county; the Hon. ROBERT J. GRIER, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed September 13, 1915.

HANNA & LAUDER, for appellant.

L. E. MURPHY, for appellee Jennie McNamara.

HANLEY & COX, for appellee J. W. Duncan.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

This is an appeal from a decree entered by the Circuit Court of Warren county, in a foreclosure proceeding, fixing the priorities of certain liens claimed by the parties to this proceeding in the undivided half of the growing corn on ninety-five acres, the undivided half interest in the corn being the property of the debtor, Bruce L. Brownlee. Before the controversy arose, Bruce L. Brownlee had become indebted to the several parties to this suit. He had become indebted to appellant, William Payne, upon two promissory notes: one dated January 4, 1913, for $511, and due October 1, 1913; and another dated January 17, 1913, for the sum of $200, due October 17, 1913.

These notes had been secured by a chattel mortgage on certain horses and cattle owned by Brownlee. He had also become indebted to C. A. McLaughlin upon a promissory note for the sum of $136, which was also secured by a second chattel mortgage on the property

covered by the mortgage to Payne. But the indebtedness represented by this note and mortgage was finally acquired by the appellant, Payne, and became a part of the claim which he held against Brownlee at the time of the filing of the bill of complaint. Brownlee also owed the appellee Jennie McNamara $290 for back rent, and she also turned over her claim against Brownlee to Ben Eilenberger, a constable, for collection. Eilenberger induced the appellee John W. Duncan to loan Brownlee $150 upon a promissory note for that sum, due October 2, 1913, which was secured by another chattel mortgage on the chattels embraced in the mortgage to Payne. After obtaining the loan from Duncan, Brownlee was enabled to pay $230 on the McNamara indebtedness, and this amount was paid to Eilenberger for her and credited by her upon the indebtedness. Brownlee then confessed a judgment for the balance of $60, due Jennie McNamara, before a justice of the peace.

In the following year, on March 29th, Brownlee became indebted to the appellant, Payne, in the further sum of $300, for which Brownlee gave him a promissory note of this amount, but no security was given for either of these notes at that time. On May 8th an execution was issued by the justice of the peace to Ben Eilenberger, as constable, on the McNamara judgment against Brownlee, and some efforts were made by the constable to collect it; but nothing was paid upon it, and the execution was subsequently returned "no property found," and then another execution issued to the constable on July 17, 1913.

Brownlee raised the ninety-five acres of corn in question in the year 1913, as a tenant on the so-called Ira Nichols farm, and it was laid by about the 10th of July, and in this corn he had an undivided half interest. On July 19th Brownlee executed a bill of sale to Peter M. Freed, who was his brother-in-law. The evidence shows that there was no consideration for

this bill of sale, and that it was really executed for the purpose of putting off Brownlee's creditors and to gain further time to settle his obligations. After he made this transfer of his interest in the corn to Freed, he absented himself for a period of three weeks, and paid a visit to the State of Minnesota. When Eilenberger found out that Brownlee had transferred the ninety-five acres of corn to Freed, he went to Freed and threatened to make a levy, and to seize some of Brownlee's chattels unless Freed executed a chattel mortgage on the ninety-five acres of corn to Jennie McNamara and J. W. Duncan to further secure payment of their respective claims. Freed did execute a chattel mortgage to secure the payment of a note for $54 payable to Jennie McNamara, and of a note of $165 payable to J. W. Duncan, on August 15, 1914, mortgaging the undivided half interest of the ninety-five acres of growing corn in question. These papers were delivered to Eilenberger for the respective parties.

It may be well to say here, however, that the evidence clearly shows that Eilenberger had no authority from the appellee Jennie McNamara to take a note and chattel mortgage for her claim, which was represented in the execution he held as constable, at that time, and that she had no knowledge that he had taken such note and mortgage, and that she never in any way sanctioned nor ratified the act of taking it.

After Brownlee returned from his visit to Minnesota, he and the appellant Brownlee figured up the entire indebtedness held by Payne against him; and on August 23, 1914, Brownlee, in order to secure the payment of the whole indebtedness as agreed upon, gave to Payne another chattel mortgage on his chattels and included the ninety-five acres of growing corn in question. This latter chattel mortgage is the one on which the lien claimed by appellant in this proceeding is based. At the time the appellant took his second chattel mortgage, the execution in favor of the appellee

Jennie McNamara was in the hands of Eilenberger, as constable, and was a lien on the corn in question, and it was a first and prior lien, unless the appellee in some way waived or forfeited her right to such a lien.

It is true as claimed by appellant, and a well-settled doctrine, that the object of an execution is to obtain satisfaction of the judgment on which it issues, and any acts of the creditor or direction from him or her to the sheriff or constable diverting an execution from its proper purpose renders it dormant and inoperative against other creditors, and clothes them with priority. (*Gilmore v. Davis*, 84 Ill. 487; *Koren v. Roemheld*, 6 Ill. App. 275; *Kellogg v. Griffin*, 17 Johns. [N. Y.] 274; *Knower v. Barnard*, 5 Hill [N. Y.] 377.) An attempt to make use of an execution, even without fraudulent intent, merely for the purpose of security is a perversion of the right, and renders it constructively fraudulent as to junior executions and writs. (*Everingham v. National City Bank of Ottawa*, 25 Ill. App. 645.) Nothing of that kind, however, is disclosed by the evidence in this case; in fact it is very evident that the appellee McNamara relied very strongly on the proper purpose of her execution, and insisted at all times upon having it levied, and the debt recovered through its instrumentality, and she never in any way appears to have waived her right to having it done. We think, therefore, that the Circuit Court was right in holding that the lien of the McNamara execution was first in the order of the liens involved. The appellee Duncan acquired his lien on the corn in question by the chattel mortgage executed by Peter M. Freed, and appellant claims that because the bill of sale, in which Brownlee's interest in the ninety-five acres of growing corn was transferred to Freed, was without consideration and fraudulent as to creditors, the chattel mortgage to the appellee Duncan was necessarily invalid. On the assumption that Duncan was a party to the fraud, or was a party to the fraudulent

transfer to Freed, or had knowledge of its fraudulent purpose, this would be a correct statement of the rule, but the evidence does not show that he was a party to the fraudulent transfer, or had any knowledge of its fraudulent character. So far as he was concerned, or knew, Freed apparently had a legal title to the growing corn in question, by the execution and delivery of the bill of sale. And the title was legally complete, without Freed taking manual possession of the crop. (*Ticknor v. McClelland,* 84 Ill. 471.) Even if Freed did obtain the title of this property by means of fraud, he could legally transfer that title and create a valid lien, by giving a chattel mortgage upon it to a person who was not a party to the fraud and had no knowledge of it, and who accepted the mortgage given in good faith. (20 Cyc. 647; *Jewett v. Cook,* 81 Ill. 260; *Kranert v. Simon,* 65 Ill. 344.)

The chattel mortgage given by Freed to appellee Duncan appears to have been accepted by him in good faith, and without any knowledge of the fraudulent character of the bill of sale, and must, therefore, be regarded as valid. The lien of this mortgage attached to the corn, prior in time to the lien of the chattel mortgage taken by appellant. The court, therefore, properly found that Duncan's lien was second in the order of priorities.

We find no error in the adjustment of the priorities in the decree of the liens involved, and the decree should therefore be affirmed.

*Decree affirmed.*