## EUGENE M. KENDALL v. LOOMIS K. BISHOP.

*Chattel mortgage—Assignment for benefit of creditors—Preferences—
Trust for use of grantor—Corporations.*

1. The instrument executed to the plaintiff is held to be void, as against creditors, because—

    *a*—It was never authorized by the directors of the corporation.
    
    *b*—It does not provide for *all* of the creditors, but prefers some, and gives the surplus to the debtor.

2. A corporation may assign its property on the same terms as a private person, if authorized by its directors. *Town v Bank of River Raisin*, 2 Doug. 530; *Bank Commissioners v. Bank of Brest*, Harr. Ch. 106.

3. Whether an instrument is a *general* assignment depends on its character, and not on the *name* which parties see fit to give it.

4. All transfers made in *trust* for the use of the grantor are void as against creditors, under How. Stat. § 6184, and one reason of this is because the property is thus put beyond the reach of process.

5. An assignment of all one's assets to an assignee for the benefit of creditors is within all the definitions of a general assignment.

6. Preferences are forbidden by our statute of assignments; and giving the surplus to the debtor before paying all debts has always been unlawful, and comes also within the mischief of trusts for the grantor.

Error to Kent. (Grove, J.) Argued June 26, 1889. Decided October 18, 1889.

Replevin. Defendant brings error. Reversed. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*Taggart & Denison* and *William Aldrich Tateum,* for appellant.

*More & Wilson,* for plaintiff.

CAMPBELL, J. Defendant, as sheriff of Kent county, levied

on the machinery, fixtures, and stock, finished and unfinished, and personal property, of the Sherwood Manufacturing Company, so far as remaining in the factory, under attachments for debts to the amount of $938.47, on the eighth of June, 1888, and plaintiff replevied them. The only question in the case is whether, as against creditors of the attachment debtor, the arrangement under which Kendall held the property was valid.

He set up his claim under a document in writing, executed by the president and treasurer of the manufacturing company on the fourth of April, 1888, which is claimed to have been lawfully authorized by a vote of the board of directors on April 3. On that day the board authorized a chattel mortgage of the entire assets to be made to Kendall to secure certain claims, and Kendall relies on the instrument made as no more than a valid chattel mortgage. Defendant attacks its validity as not being a chattel mortgage, properly so called, but a transfer in trust, which is in fact not only a trust for the benefit of the grantor, and so void as against creditors, but is also an assignment of all the assets for the benefit of preferred creditors, and of no others.

It is not urged that there was any dishonest purpose immediately intended to defraud, which would amount to fraud in fact. The fraud set up is what would, if illegal, become so without necessary reference to any consciously wrong designs, as contrary to law, and therefore constructively fraudulent. The debts were honest, and the parties are admitted to be honest holders of them. But defendant, representing attaching creditors, insists they had no right to put the property in Mr. Kendall's hands, as the record shows was attempted.

It is evident from the record that this corporation was practically insolvent. But no steps had been taken against it as an insolvent corporation; and it was held in *Town v. Bank of River Raisin*, 2 Doug. 530, that a corporation may

assign on the same terms as a private person. It must follow, however, that an assignment will be void against creditors in the same way. It is also well settled that whether an instrument is a general assignment depends on its character, and not on the name which parties see fit to give it; and in the present case we must look to all the facts as found.

The debts provided for being valid debts, no question arises concerning them, except so far as one is raised on the right to provide preferences for corporation officers. But there seems to be no reason why one honest creditor should be on a worse footing than another, and we do not find in our law any such distinction. We are therefore remitted to an examination of the legal quality of the dealings.

It is claimed on both sides that whatever power existed in the president and treasurer to make the instrument in question was derived from the resolution of the board of directors of April 3, 1888. The form of this is material.

" It was moved by Mr. Drury, and supported by Mr. Jenks, that in view of the unsatisfactory condition of the finances of the company, and to secure the National City Bank of Grand Rapids, Michigan, and Samuel B. Jenks and Eugene M. Kendall, as holders of commercial paper and notes of this company, and all debts for labor which are now or may hereafter become due, a chattel mortgage be immediately executed and delivered by the proper officers of the Sherwood Manufacturing Company to Eugene M. Kendall, as trustee, for the National City Bank of Grand Rapids, Michigan, Samuel B. Jenks, and Eugene M. Kendall, as holders of said notes, and all persons in the employ of this company, or who may hereafter be employed by this company, to cover and include and convey all the personal property, of whatsoever kind or nature, now belonging to and owned by said The Sherwood Manufacturing Company, and all assets of said company ; said chattel mortgage to cover and include all goods, stock, and material that may from time to time be purchased by said company in the regular prosecution of its business ; and reserving to said company in said mortgage the right to sell its goods and manufactures in the ordinary course of its business."

At this time most of the preferred indebtedness was not due, and it was to mature at different times, running into June following.

The so-called mortgage, executed April 4, is to this effect: Reciting, first, indebtedness to the National City Bank in about $15,000, to Kendall in about $2,000, and to Jenks in about $1,000, all in notes, drafts, and commercial paper of the company, and that the company desired to secure such paper, and all renewals thereof, and that it was also indebted to various persons for labor, and desired to keep them in its employment, and secure such debts as were due, and might thereafter become due, for labor, the paper proceeded, by reference to the resolutions of the directors, to convey to Kendall its property, as follows:

"All of the stock and material, whether manufactured, in process of manufacture, or unmanufactured; all machinery, tools, and implements of every kind and nature; all belting, steam-piping and fixtures; all office and other furniture; the safe, and fixtures of all kinds; all goods, wares, and merchandise, in transit or otherwise; all books of account and stationery; and all credits, evidences of debt, rights of action, and bills and accounts receivable; and all rights secured by letters patent of the United States and by caveat, and all interests therein; and all other property and assets of said first party now in and about its factory on Prescott street, in said city of Grand Rapids, or wheresoever the same may be; also all goods, merchandise, stock, and materials that may from time to time be purchased by said first party in the regular course of its business; the said first party to continue in possession thereof, and to have the right to sell and dispose of the same, in the usual and ordinary course of its business. To have and to hold, * * * in trust, however, and upon condition, that this conveyance shall only be considered as a mortgage upon said goods, chattels, and assets now remaining and continuing in the possession of said party of the first part as aforesaid."

Then follows an agreement by the company to pay the debts, and keep the property insured, with liberty to the trustee to do the same thing, if necessary; and the ordinary

defeasance in chattel mortgages, giving the trustee power to take possession on default, or in case of attempts to dispose of property in unusual ways, or to remove it from Grand Rapids, except in course of business, or in case he should deem himself insecure. The power of sale allowed the trustee to sell at private sale, and, in case of public sale, to do so after six days' notice posted in three public places. The power to sell at private sale is the only unusual clause in the defeasance thus far. But the instrument then proceeds to provide for rather peculiar powers, substantially as follows:

The trustee was empowered, if he should think it for the interest of the secured creditors, to continue the manufacturing business, so as to get all material on hand ready for market, and buy new stock, goods, merchandise, and materials, long enough to dispose of the property for the best advantage; and from the proceeds he was,—

*First*, to pay the expenses of the trust and sale and disposition of property.

*Second*, to pay all debts to employés.

*Third*, to pay the other secured debts in full or *pro rata.*

*Fourth*, to pay the surplus moneys to the company.

In case of death, resignation, or inability, a successor could be appointed by the Kent circuit court.

Kendall accepted the trust on April 4, which was the date of execution, and on the sixth went into possession of everything, and continued selling at private sale until nearly all was sold, leaving nothing but what was attached by defendant. The court, on the trial, stopped the inquiry into the transactions of the trustee and the condition of the company. But it appeared from the testimony of the secretary and treasurer, Mr. Alexander, who, as such, signed the instrument, and who continued to act under the trustee as agent in charge, that the receipts from sales were about $14,000,

that expenses and outlay for material were $7,000 or $8,000, and about $6,000 remained for debts and for the compensation of the trustee and his agent, out of which labor debts had been paid, and about $5,000 of the specially secured debts.

The court shut out testimony offered to show actual fraud in the directors; particularly in running up debts without calling in the unpaid stock. The trustee testified his possession was taken by the desire of the directors, and employed Mr. Alexander because of his knowledge of the business.

Upon a comparison of the trust instrument with the resolution of the directors, it will be seen that its contents, down to the end of the defeasance and disposal clause, are a complete and full execution of the resolution, except that it provides for private as well as public sales, and needed nothing more to carry out the authority. It is also to be noted that the power to continue in possession, doing business, which the resolution expressly required to be reserved, is retained in the earlier part of the instrument, although subject to be divested by the mortgagee at his will,—a qualification not quite in harmony with it. But, from this power of sale on, the powers and provisions are entirely different and in direct opposition to the resolution.

By this document the trustee is expressly empowered to continue the business if he chooses, to go on and complete the manufacture of the stock, and to buy further material and goods to help on the profitable winding up of the business, and to dispose of everything as soon as reasonably practicable. And by this grant of powers it is evident that the company, having put everything in his hands, could not possibly do anything to pay debts or redeem the mortgage, while the intermingling of new and old business would deprive execution creditors of any means of getting a sale of the residue belonging to the mortgagor, if, in fact, there

should be, as the law and the instrument both assume there might be, one.

In other words, Mr. Kendall not only took an interest by way of security for debts which by law any execution creditor would have a right to redeem, but he also took title to the surplus, with power to manage and dispose; and a trust was created for the company which would not be subject to execution, as a mere equity in the proceeds, and not an ownership in the property.

By section 6184 of Howell's Statutes, all transfers made in trust for the use of the grantor are void as against creditors, and one reason of this is because the property is thus put beyond reach of process.

But in this case the difficulty goes further. The direct effect of this instrument, as made, is to put the entire assets, legal and equitable, into the hands of a trustee for sale and distribution. This is precisely what is done by any general assignment; and, if there is any distinction between this and other common-law assignments, it is that this trustee is given powers which would be unlawful as against creditors by the common law. An assignment of all one's assets to an assignee for the benefit of creditors is within all the definitions of a general assignment. Burrill, Assignm. chapter 8. It is the completeness of the transfer that gives it character.

As a general assignment, this instrument cannot be modified merely because the latter part follows what of itself would have been a mortgage. Whether it was supposed that this could be made a mere mortgage by giving it such a beginning, or whether it was begun for one purpose and finished for another, we need not inquire, although, in view of the resolution of the directors, it seems most likely. At any rate, it ends as a general assignment. And it is void against the defendant for two reasons:

*First.* It was never authorized by the directors.

*Second.* It does not provide for all the creditors, but prefers some, and gives the surplus to the debtor.

Preferences are forbidden by our statute of assignments; and giving the surplus to the debtor before paying all debts has always been unlawful, and comes also within the mischief of trusts for the grantor.

The judgment below must be reversed, and judgment of return entered for defendant on the findings, with costs of both courts.

The other Justices concurred.