## HILL *v.* MALLORY.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—PREFERENCES.

   A transfer of all one's property to a creditor in payment of his claim, and in further consideration of his agreement to pay the claims of certain other creditors, who are not consulted with reference thereto, is in effect an assignment for the benefit of creditors, and, if any are excluded, is void for preferences.

2. PARTNERSHIP—EVIDENCE.

   Evidence that a son used the words "we" and "our" in referring to the business which he carried on for and with his father, that he contemplated that he would eventually succeed to such business, and that he conducted it after it was transferred to him in the same way as before the transfer, is insufficient to prove that he was a partner, and therefore incapable of taking the property as against creditors.

3. FRAUDULENT CONVEYANCES—NOTICE.

   A transfer by an insolvent debtor is void as against a creditor, although it was made in payment of an honest debt of an amount equal to the fair value of the property, where the transferees knew that the debtor had made false statements in regard to, or had purposely concealed, his financial condition in order to obtain credit on purchases from such creditor, or knew that the purchases were made from the latter for the purpose of obtaining goods to secure their claims.

Error to St. Clair; Vance, J. Submitted January 8, 1897. Decided April 27, 1897.

Replevin by Michael Hill, Jr., and others, against George E. Mallory. From a judgment for plaintiffs, defendant brings error. Reversed.

*Avery Bros. & Walsh,* for appellant.

*Chadwick & McIlwain,* for appellees.

GRANT, J. One Michael Hill had been for many years engaged in the business of buying and selling lumber at

Port Huron. He had during this time purchased the most of his lumber from George N. Fletcher & Sons, of Alpena, usually upon credit, giving his notes, which were at times extended. His three sons, the plaintiffs in this case, were in his employ. March 12, 1895, Mr. Hill made a bill of sale to his sons of all his lumber, personal property, and accounts, and also assigned to them the contract for the land on which his lumber yard was situated. They executed articles of copartnership, took possession of the property, and entered into the same business as that carried on by their father. At the same time he conveyed to his daughters a house and lot worth $1,000. His daughters were unmarried, and lived at home as members of his family. For this conveyance there was no legal consideration as against creditors, for he owed them nothing. He thus transferred all his property except his homestead, of the value of which there is no evidence. Fletcher & Sons, upon being informed of these conveyances, commenced a suit in attachment, and levied upon the lumber and other property used in the business. Plaintiffs immediately brought this action of replevin against the defendant, the sheriff, claiming title by virtue of the sale to them. They recovered verdict and judgment. The further statement of facts will be made in connection with the points raised.

The contentions of the defendant are as follows:

'(1) The transfer to plaintiffs was, in effect, a common-law assignment of all Hill's property, coupled with a trust and a preference, and therefore void.

"(2) Mr. Hill could not make an agreement with his minor sons to pay them for services rendered during minority, which would be valid as against a creditor without notice.

"(3) The plaintiffs, knowing that the father was insolvent, and would be unable to pay his debts, at the time the indebtedness to Fletcher & Sons was created, they having been parties to the purchases, could not become *bona fide* holders of the stock so purchased from the Fletchers.

"(4) The boys, having put a certain amount of their wages into the business each week, having equal management and control with the father, expecting to make it their life business, made such a state of facts as constituted in law a partnership, notwithstanding the business was conducted in the name of Michael Hill. This being true, the sale from father to sons was void.

"(5) The October and November sales were made by Fletcher & Sons to Michael Hill, after representations as to his indebtedness and the condition of his business, which representations were false, and known to be by the plaintiffs. This being true, the sale by the father to the plaintiffs of the stock purchased of Fletcher & Sons was void and fraudulent.

"(6) If this sale was made with the intention or motive of defeating Fletcher & Sons, these plaintiffs could not become *bona fide* purchasers, and in this case it would be a fraud upon Fletcher & Sons even if made to pay a *bona fide* indebtedness."

1. Plaintiffs' testimony tended to show that they were employed by their father at a given price per day, that they were to pay a given price per week for their board, that they were given a certain amount per week for spending money, that they had lent their father certain amounts of money, and that he owed them about $5,000. They claim that in payment of this indebtedness the sale was made to them, and that at the same time they agreed to pay five other creditors, whose aggregate indebtedness was about $1,300. The claim of Fletcher & Sons was about $3,000. The father testified that the conveyance was made on condition that the boys would pay these debts. His testimony on this point is as follows:

" *Q.* You conveyed to the boys on condition that they would pay them?

"*A.* Yes, sir.

" *Q.* That was the condition of your conveyance?

"*A.* Yes, sir.

" *Q.* And you intended this transfer to them to be for their benefit and those other creditors that you named?

"*A.* Yes, sir.

" *Q.* That was the purpose of the transfer?

"*A.* Yes, sir.

"*Q.* Was to take care of the boys' indebtedness and the indebtedness to Lassen, Lauth, Bernatz, and the two small notes John and Michael Hill were on?

"*A.* Yes, sir.

"*Q.* And that was its real purpose, was it not?

"*A.* Yes, sir."

The effect of this transaction was, of course, to prefer certain creditors, and was so intended by all the parties to it. A debtor may prefer a creditor by a mortgage on all his property, or by a transfer of all his property in payment, when the value of the property is not so in excess of the debt as to raise a presumption of fraud. This has been so often held that it is unnecessary to cite authorities. But that is not this case. The creditors whose claims plaintiffs agreed to pay were not parties to the transaction. It was not binding upon them. There was no novation. They could not sue the plaintiffs. If they should not see fit to substitute plaintiffs as their creditors for Mr. Hill, their only remedy would be by suit at law against him, or by bill in equity to enforce the trust. The transfer was not for the sole purpose of paying the plaintiffs' claim, but also to secure the payment of five other creditors. Plaintiffs took the property burdened with these obligations. If this is not a transfer for the benefit of creditors, for what is it? It did not operate as a payment to five creditors, because they did not agree to it. If this conveyance had been made to a stranger, and it covered all the property of the debtor, in consideration that the vendee should pay certain creditors to the exclusion of others, it would amount to an assignment for the benefit of creditors, and be void under the statute. The effect of such a transaction cannot be avoided by saying that it was not intended as a common-law assignment. Courts will look to the substance of the transaction, and not to the name which the parties see fit to give it. Is the character of the transaction changed by conveying to a creditor, who acknowledges satisfaction of his own debt, and agrees to pay certain others? Suppose plaintiffs had

agreed to pay all their father's debts, and the transfer had embraced all his property, can there be any doubt that the transaction would have been an assignment for the benefit of creditors? The character of the assignment is not changed by leaving out one creditor, as in this case, and securing others. One creditor has a right to secure payment of his own debt by a transfer of the property of his debtor; but when he takes it all, and agrees to pay certain creditors to the exclusion of others, he takes it burdened with a trust, and becomes an assignee for the benefit of creditors. We are not, of course, holding that these six creditors of Mr. Hill might not, by agreement, have taken from him all his property in payment of their debts. Were that the situation, there would probably be no difficulty in upholding the transaction. But five of these made no such agreement, and, if they have any claim against the plaintiffs, it is against them as trustees, and not as debtors, and because the property was transferred to them for the benefit of themselves and certain other creditors. We think this transaction is clearly within the principle established in the following cases: *Kendall* v. *Bishop*, 76 Mich. 634; *Burnham* v. *Haskins*, 79 Mich. 35; *Pettibone* v. *Byrne*, 97 Mich. 85.

The difficulty with the case is that the record fails to show that the transfer included all of Michael Hill's property. The homestead may have been worth $5,000 or $10,000, and, if so, there would be no occasion for Fletcher & Sons to attack the conveyance as fraudulent. We express our views upon the point because it will probably arise on a new trial.

2. We think there was not sufficient evidence to justify a finding that the transaction was void because one of the plaintiffs was a minor at the time his contract for employment was made, or that the father and sons were in fact partners. They did not hold themselves out as partners, and the facts that the sons might have contemplated that they would eventually succeed to the business, that they used the words "we" and "our" in connection

with it, and that to all appearance the business was conducted in the same way after the transfer as before, are not sufficient to establish a partnership.

3. The evidence for defendant tended to show that plaintiffs knew all about the representations made by their father to Fletcher & Sons as to his financial condition; that one of the plaintiffs wrote the letters; that the father's books of account showed no indebtedness to any of his sons; that there was no writing showing any indebtedness; that the bills of October and November were purchased of Fletcher & Sons in contemplation of the transfer to the sons, and with their knowledge; that the transfer was in fact made for the purpose of preventing Fletcher & Sons from getting their pay; and that plaintiffs and their father had been talking the matter over for nearly a year. In view of this evidence, it was error to leave the subject to the jury under the following instruction:

"If it is in payment of an honest debt, it will be sustained by the law, even though the effect of it may defeat all other creditors in the collection of their claims, and I may say to you that it would be good in law even if that was the intention of the transfer, so long as the indebtedness that it was turned over to satisfy was an honest, *bona fide*, and legal indebtedness. It would follow from this rule that if the indebtedness from Michael Hill to his sons was an honest, *bona fide*, and legal indebtedness, in such an amount as would be fair, just, and reasonable compensation for the amount of property that he turned over to them, the transfer would be valid in law, even though it defeated Fletcher & Sons, and even though it was intended to do so."

They should have been instructed that, if these purchases were made with full knowledge by the plaintiffs, and with their assent, that their father had made false statements in regard to, or had purposely concealed, his financial condition in order to obtain the credit, or if the purchases were made for the purpose of obtaining the goods to secure plaintiffs their debts and to prevent

Fletcher & Sons from securing theirs, and this was known to plaintiffs, then the sale was fraudulent. There may be cases to which the instruction of the learned circuit judge would apply. Usually the intent of the purchaser is an important element of fraud, and, though his debt may be an honest one, its honesty is not conclusive of the honesty of the subsequent transfer or sale. Be this as it may, the instruction did not cover the case made by the defendant. See *Gumberg* v. *Treusch*, 103 Mich. 543.

For this reason the judgment must be reversed, and a new trial ordered.

LONG, C. J., MONTGOMERY and MOORE, JJ., concurred with GRANT, J. HOOKER, J., concurred in the result.