McCANN *v.* DILLABAUGH.

1. DEBTOR AND CREDITOR — ARRANGEMENT BETWEEN SECURITY
   HOLDERS—NOVATION—GENERAL ASSIGNMENT.

   By an arrangement between the mortgagor and the several
   mortgagees of a stock of goods, the value of which at a forced
   sale would have been inadequate to pay the indebtedness
   covered by the mortgages, a bill of sale of the stock was given
   to one of the mortgagees, who agreed to pay the other mortga-
   gees if a sufficient amount should be realized out of the stock.
   Thereupon the debtor was released, the old mortgages were
   canceled, and new ones executed by the purchasing mortga-
   gee, the other mortgagees accepting them in lieu of those
   canceled. The transaction was free from fraudulent intent.
   *Held*, that the arrangement constituted a valid novation, and
   did not amount to an assignment for the benefit of creditors,
   void for preferences.

2. SAME—CONSIDERATION—FRAUD.

   Such a transaction is clearly distinguishable from that involved
   in *Allen* v. *Stingel*, 95 Mich. 195, where the value of the stock
   transferred to the mortgagee greatly exceeded the considera-
   tion for the transfer, and the transferee purchased with knowl-
   edge that he was already amply secured, and that the effect
   of the transfer would be to defraud unsecured creditors.

Error to Delta; Stone, J. Submitted June 8, 1898.
Decided June 28, 1898.

Garnishment proceedings by John McCann and others,
copartners as McCann & Co., against Dexter C. Dilla-
baugh, as garnishee of Ber Buchman and others, copart-
ners as Buchman Bros. From a judgment for defendant,
plaintiffs bring error. Affirmed.

Plaintiffs were creditors of the principal defendants, and,
upon bringing suit, garnished the defendant Dillabaugh,
and seek to hold him upon the ground that he has property
in his hands belonging to the principal defendants. Ver-
dict and judgment were rendered for the defendant.

The material facts are as follows: The principal defendants, general merchants doing business under the firm name of Buchman Bros., were indebted to various parties, and, among them, the First National Bank of Escanaba, to which they were indebted in the sum of $1,200. They gave a mortgage to the bank, October 22, 1896, and at the same time executed several other mortgages, which were subject to the bank mortgage, and, among them, one to Dillabaugh. The total amount of the mortgages was $3,800. The bank mortgage was by mistake $600 too large. October 25th the bank took possession of the stock under its mortgage, having ascertained that Buchman Bros. owed a much larger amount than they had represented. An inventory was taken, and the stock, at cost price, amounted to $3,900. The bank, evidently desiring to protect the subsequent creditors as well as itself, made efforts to find a purchaser of the stock. On November 7th an arrangement was reached between the mortgagees, the Buchman Bros., and Dillabaugh, by which Buchman Bros. executed a bill of sale to Dillabaugh for the expressed consideration of $2,900. Dillabaugh agreed to pay the mortgagees $2,350, and one creditor by the name of Bassford received $50 in goods from the store. The actual consideration was therefore $2,400. Whether this included Dillabaugh's claim is not clear. The old mortgages were canceled, and Dillabaugh executed new notes and mortgages to secure the sums he had agreed to pay. By an arrangement between these secured creditors and Dillabaugh it was agreed that, if he did not realize enough out of the stock to pay the amount of these notes and mortgages, he should only pay the amount realized. He immediately took possession, hired one of the Buchman brothers, and placed him in charge of the store. It seemed expedient to Dillabaugh to purchase new goods in order to help sell the old, and he made considerable purchases for that purpose. The business was so prosperous that he finally concluded to continue it. At the time of the trial, July 21, 1897, he had purchased $3,800 worth of new

goods, and had paid all the mortgages except $450, had paid for the goods bought, and had goods on hand which he estimated, without any inventory, to be worth between $2,000 and $3,000.

*F. D. Mead*, for appellants.

*George Gallup*, for appellee.

GRANT, C. J. (*after stating the facts*). 1. Counsel for the plaintiffs insists that the transaction was, in effect, an assignment for the benefit of creditors, and void because of preferences. We cannot concur in this view. It was doubtful whether the goods at an auction sale would bring enough to pay 50 per cent. of the mortgages. Defendant gave evidence to show a *bona fide* sale. The debtors were released from their obligations. The creditors discharged them, and accepted in lieu thereof the obligation of Dillabaugh. The novation was complete. The case is clearly distinguishable from that of *Hill* v. *Mallory*, 112 Mich. 387. The entire question of fraud was submitted to the jury under full and correct instructions. The jury found there was no fraud, and their verdict has settled the question.

2. This is not a case for the application of the rule established in *Allen* v. *Stingel*, 95 Mich. 195. It cannot be said that Dillabaugh purchased with knowledge that he was amply secured, and that Buchman Bros. were insolvent, and that he entered into the transaction for the purpose of defrauding the unsecured creditors of Buchman Bros. His mortgage was a second one. The goods were old, and, if sold under the mortgages, would have failed to realize the amount secured.

We find no error in the record, and the judgment is affirmed.

The other Justices concurred.