### BELDING-HALL MANUFACTURING CO. *v.* SMITH.

Chattel Mortgages—Validity — Resulting Trust — Common-Law Assignment.

S. executed an instrument purporting to chattel mortgage and convey to defendant, in trust, all the goods, chattels, and effects in three lumber yards, for the purpose of securing certain specific debts, and providing that S. should not remove any of the property without the consent of the trustee, but authorizing S. to sell it in the usual course of business, accounting to the trustee for the proceeds thereof, and providing that, in case of default in the payments specified, the trustee should take possession of the property, dispose of it at public or private sale, pay the secured indebtedness, and turn over the balance of the proceeds, if any, to S. *Held*, that the instrument constituted a valid chattel mortgage, and was not void as to creditors on the ground that it created a resulting trust, or was a common-law assignment with preferences.

Error to Lenawee; Chester, J. Submitted October 3, 1900. Decided October 31, 1900.

Garnishment proceedings by the Belding-Hall Manufacturing Company against Joseph H. Smith, as garnishee of Augustus W. Slayton. From a judgment for defendant, plaintiff brings error. Affirmed.

*McGarry & Nichols*, for appellant.

*Watts, Bean & Smith*, for appellee.

MOORE, J. The sole question involved in this case is what construction is to be put upon the following instrument:

"I, Augustus W. Slayton, of the village of Tecumseh, county of Lenawee, and State of Michigan, party of the first part, do hereby chattel mortgage and convey to Joseph H. Smith, of said Tecumseh, as trustee, in trust for the following-named purposes, the property herein after mentioned: All the goods, chattels, credits, and effects of every sort and character situated in and belonging to my lumber yard at the village of Royal Oak, Oakland county, Michigan, and commonly designated as the 'Royal Oak Lumber Yard,' said property consisting of a land contract, lumber, shingles, lath, hardware, coal, agricultural implements, scales, tools, book accounts, bills receivable, lime, cement, fertilizer, buildings, and office furniture; also all the goods, chattels, credits, and effects of every sort and character situated in and belonging to my lumber yard in the city of Detroit, Wayne county, Michigan, and commonly designated as 'A. W. Slayton's Wholesale Lumber Yard,' being situated at the crossing of Twenty-Fourth street and the Michigan Central Railroad in said Detroit, said property consisting of lumber, horses, harnesses, dray, carts, chains, office furniture, bills receivable, and book accounts; also all the goods, chattels, credits, and effects of every sort and character situated in my yard and office in said village of Tecumseh, and commonly designated as 'A. W. Slayton's Lumber Yard,' said property consisting of shingles, lumber, office furniture, bills receivable, book accounts, and promissory notes.

"This mortgage is made to the said Joseph H. Smith as trustee, and in trust for the following purposes: In case said party of the first part shall not comply with the terms of this instrument, and shall not pay the debts hereinafter

mentioned, and in case of foreclosure, said trustee shall first pay himself the expenses of this trust, including legal expenses and expenses for labor; (2) the Tecumseh State Savings Bank, of said Tecumseh, $1,383; (3) Mrs. C. M. Slayton, $1,270.55; (4) [other creditors, whose names and amount of indebtedness were given].

"Said party of the first part agrees to pay the amount first herein designated on demand, and each of the other said sums on or before one (1) year from the date of this instrument.

"Said party of the first part agrees not to remove any of said property from the place or places where situated, to wit, the village of Royal Oak, the city of Detroit, and the village of Tecumseh, without the written consent of the said party of the second part; also agrees to keep said property insured for the benefit of said second party, and hereby assigns the insurance on said property to said party of the second part; also, if he shall make default in any payment hereby secured, or in any of the covenants or agreements herein contained, said party of the second part may, at his option, during said default, declare the whole sum or sums secured hereby due and payable, and a demand of possession or seizure of any part of said property shall be sufficient notice of his election to declare the same due.

"Said party of the second part agrees that until possession is taken, or demand of the property herein mortgaged, the same shall remain in the possession of the party of the first part, and he may use and sell said property in the usual course of business, accounting for the proceeds of such use and sale to said party of the second part.

"It is further agreed that, in case of default in any of the agreements herein specified by the said party of the first part, said party of the second part is hereby authorized and empowered to enter upon any premises wherever any of said property may be located, and take possession of the same, and hold it at the said place of business, or remove it to such other place or places as he may desire, and there retain the same at the risk and expense of said party of the first part, and then to sell the same at either private sale or public auction, in bulk or in parcel, and, if at public sale, after giving ten days' notice by one or more written or printed notices to be posted up in the township or city where sale is to be made, and out of the moneys to arise from such sale to pay, first, himself a

reasonable compensation for carrying on this trust; (2) the expense of such seizure, holding, removal, and sale; and (3) the sums of money owing hereunder in the order above mentioned; and the balance, if any remaining, to said party of the first part.

"Two certain mortgages of even date herewith are given by said party of the first part, covering certain real estate owned by him, to secure further a part of said debts; and this security is to be exhausted before said real-estate security is sold under the terms of said real-estate mortgages."

The circuit judge held it a chattel mortgage, and valid and enforceable as a chattel mortgage for the benefit of the creditors therein mentioned, in the order mentioned.

The plaintiff is a creditor of the principal defendant, against whom it has a judgment, and insists the instrument is void for two reasons: *First,* it is in violation of the statute as to resulting trusts; *second,* it is nothing more nor less than a common-law assignment with preferences, and is therefore void. It is claimed that, though the instrument is crudely drawn, it does convey the property mentioned to the trustee; that the words "sell" and "convey," when the latter word is used as it is used here, are synonyms. 7 Am. & Eng. Enc. Law (2d Ed.), 485, and the cases there cited. It is insisted the effect of the language used is to pass the title of the property to Mr. Smith at once; that it creates a resulting trust, and is nothing more nor less than a common-law assignment, and void for preferences,—citing 3 Comp. Laws 1897, § 9514; *Kendall* v. *Bishop,* 76 Mich. 640 (43 N. W. 645). It is said the instrument cannot be sustained as a mortgage, because there is no defeasance clause in it; that by its terms it was not intended the title to the property should revert to Slayton, or that it should be returned to him; and comes within the following cases: *Kendall* v. *Bishop, supra; Burnham* v. *Haskins,* 79 Mich. 35 (44 N. W. 341); *Pettibone* v. *Byrne,* 97 Mich. 85 (56 N. W. 236); *Hill* v. *Mallory,* 112 Mich. 387 (70 N. W. 1016); *Conely* v. *Collins,* 119 Mich. 51. (78 N. W. 555).

The case of *Kendall* v. *Bishop, supra,* is very unlike this case. A conveyance of all the property and assets, wheresoever the same might be found, was made to the trustee. He was empowered to continue the business, to buy further material to help in the profitable winding up of the business, and to sell at private sale or public sale. In disposing of the case the court said:

"By this grant of powers it is evident that the company, having put everything in his hands, could not possibly do anything to pay debts or redeem the mortgage, while the intermingling of new and old business would deprive execution creditors of any means of getting a sale of the residue belonging to the mortgagor, if in fact there should be, as the law and the instrument both assume there might be, one. In other words, Mr. Kendall not only took an interest by way of security for debts which by law any execution creditor would have a right to redeem, but he also took title to the surplus, with power to manage and dispose; and a trust was created for the company, which would not be subject to execution, as a mere equity in the proceeds, and not an ownership in the property. * * * The direct effect of this instrument, as made, is to put the entire assets, legal and equitable, into the hands of a trustee for sale and distribution."

In the case at bar there is nothing in the written instrument to indicate that all the property of Mr. Slayton was conveyed to the trustee; nor was he authorized to continue the business; nor was he entitled to the possession of the property, except in case of default.

In the case of *Pettibone* v. *Byrne, supra,* property of great value was conveyed to the trustee to secure debts amounting to $160,000. Creditors representing from $16,000 to $32,000 of the indebtedness did not consent to the trust. The company had property valued at only between $3,000 and $4,000 which was not transferred. The trustee took possession of the property, and continued the business, as he was authorized to do by the transfer, and had conducted it for upwards of a year when the case was tried. He bought upwards of a million feet of timber, and other supplies, and borrowed large sums of money,

for which he had given a chattel mortgage on property. The court held:

" The instrument in question, and the action thereunder, which seems to have been contemplated, operated as a fraud upon the creditors who had not accepted the benefits of the trust. It is not a mortgage merely, for the reason that the property is conveyed absolutely to the trustee, and is beyond the reach of the creditors."

The case of *Hill* v. *Mallory*, 112 Mich. 387 (70 N. W. 1016), was decided upon another point, and is so unlike this case as not to be an authority in favor of the contention of the plaintiff.

In the case of *Conely* v. *Collins*, 119 Mich. 519 (78 N. W. 555), the assignment conveyed an absolute title in all the property to the trustee of the lumber company, and is unlike this case.

In this case the instrument starts out by saying that Mr. Slayton does hereby chattel mortgage and convey certain property. It does not appear from the instrument that all his property is included in the instrument. Further along the instrument reads, " This mortgage is made to the said Joseph H. Smith as trustee, and in trust for the following purposes." It is agreed in the instrument that Mr. Slayton will not remove the property without the written consent of the trustee, and will keep it insured. It recites that the possession of the mortgaged property is to remain with Mr. Slayton until possession is taken or demand is made by the trustee. The instrument further recites: " It is further agreed that, in case of default in any of the agreements herein specified by the said party of the first part, said party of the second part is hereby authorized and empowered to enter upon any premises wherever any of said property may be located, and take possession of the same." In the last clause of the instrument the expression is used, " This security is to be exhausted before said real-estate security," etc. We cannot read the instrument without coming to the conclusion from the language used therein that the parties thereto

intended to create a lien upon the property therein described by giving a chattel mortgage thereon. We do not doubt that if Mr. Slayton, at any time before the trustee had taken possession of the property, had paid the indebtedness named therein, it would have ended the interest the trustee had in the property; nor do we see any reason which would have prevented a creditor from levying upon the property, and selling it subject to the lien created by the mortgage. See *Warner* v. *Littlefield*, 89 Mich. 348 (50 N. W. 721); *Austin* v. *Bank*, 100 Mich. 620 (59 N. W. 597); *McMorran* v. *Moore*, 113 Mich. 103 (71 N. W. 505).

Judgment of the court below is affirmed.

The other Justices concurred.