## HALL, v. FEENEY.

Under Rev. Civ. Code, § 1299, defining a sale as a contract by which an interest in property is transferred to another for a consideration, where the owner simply transferred title to his son to enable him to close up the business and pay the proceeds to such of the father's creditors as he saw fit, the transaction was not a sale, being more in the nature of a secret trust in favor of the father.

Where the owner of goods, when he was indebted much more than their value, transferred title in them to his son without any consideration other than that he would dispose of them and pay the proceeds to such of his father's creditors as he saw fit, the transfer was not an assignment for benefit of creditors, as such transfers cannot give preferences under the statute, and must be made in the manner therein provided.

In claim and delivery for goods attached by creditors of plaintiff's grantor, evidence held to show that grantor, plaintiff's father, by the purported sale, placed plaintiff in charge of the goods to close up the business for the purpose of putting the property beyond the reach of creditors' claims.

Where a debtor, by a purported conveyance, placed his stock of goods in charge of his son to enable him to close the business and pay any of the father's creditors he saw fit, the creditors of the latter could not sue the son, as he had not assumed the debt or agreed to pay any particular debt.

Under Rev. Civ. Code, § 2368, making void every transfer of property made with intent to delay or defraud creditors, a pretended sale of goods, by which they were placed in the buyer's hands to dispose of and pay such debts of the seller as he saw fit, being made to delay creditors, was void.

Notwithstanding Rev. Civ. Code, § 2371, providing that in all cases under section 991 or under the title relating to fraudulent conveyances, with certain exceptions, the question of fraudulent intent is one of fact, and that a transfer could not be adjudged fraudulent solely for want of consideration, where the facts are undisputed, the court may, nevertheless, as a matter of law, declare the legal effect thereof by directing a verdict.

An insolvent debtor cannot place his property beyond the reach of creditors, unless it is transferred in good faith for a full and fair consideration.

In a claim and delivery against the sheriff for goods attached by creditors of plaintiff's grantor, defendant claiming the transfer was in fraud of creditors, the evidence held to show that the grantor was insolvent and unable to pay his debts when the transfer was made.

A debtor cannot dispose of his property to a third person without consideration, and authorize him to sell the property and pay the proceeds to such the debtor's creditors as he deems proper.

In claim and delivery against the sheriff for goods levied upon by creditors of plaintiff's grantor, the evidence held not to present any question for the jury.

(Opinion filed, December 16, 1908.)

Appeal from Circuit Court, Stanley County. Hon. Lyman T. Boucher, Judge.

Action by Robert I. Hall against Andrew Feeney. From a judgment for plaintiff on a directed verdict, defendant appealed. Reversed, and judgment directed for defendant.

*Gaffy & Stephens*, for appellant.

A debtor will not be permitted to alienate his property and place it in a position where it is not subject to process in behalf of his creditors, unless there be a consideration to stand in place of

the property alienated.   Smith v. Conkwright et al., 8 N. W. 876;
Switz v. Bruce, 20 N. W. 639; Newell et al v. Wagness, 44 N. W.
1014.    A delegation of power to prefer creditors is void, and a
fraud at law.   Newell v. Wagness, supra; Seger v. Thomas, 107
Mo. 635; Waggoner v. Cooley, 17 Ill. 239; Hill v. Mallery, 70
N. W. 1016.   20 Cyc. 585, note 9; Harvey v. Mix, 24 Conn. 406.

John A. Holmes, for respondent.

At common law a debtor may use any or all his property to
pay one or more creditors in preference to others, and in this state
the same right is expressly declared by statute.   Comp. Laws, Sec.
4654, and (2) The right of a debtor to pay one or more creditors
in preference to others, and the right to make a general assignment
for the benefit of all his creditors ratably, are distinct and inde-
pendent rights.    It is only when a debtor indicates his intention
of taking advantage of the law permitting and regulating general
assignments, and putting his property under its protection, that he
is denied the right to make preferences among his creditors.   Sand-
wich Man Co. et al. v. Max et al, 5 S. D. 125; Jewett et al. v.
Downs et al, 6 S. D. 319; Gardner v. Haines, 19 S. D. 514; Sund-
ling v. Willey, 19 S. D. 293.

CORSON, J.   This is an appeal by the defendant from a di-
rected verdict in favor of the plaintiff.   The action was instituted
by the plaintiff in claim and delivery to recover the possession of a
certain stock of merchandise, consisting of intoxicating liquors, sa-
loon furniture, fixtures, etc., levied upon and taken into possession
by the defendant as sheriff of Stanley county, under and by virtue
of a warrant of attachment issued in favor of Ferdinand West-
heimer & Sons against James Hall, the father of the plaintiff.

It is disclosed by the record that in June, 1906, the said James
Hall was the owner of a saloon, and had in his possession a stock
of liquors which he was selling both at wholesale and retail; that
he was indebted to the firm of Ferdinand Westheimer & Sons in
the sum of $568.61, evidenced by promissory notes, some of which
at that time were several months past due; that on the 30th of
that month the said James Hall executed a bill of sale for his said
stock of goods, furniture, bar fixtures, etc., to his son the plaintiff
for the alleged consideration of $2,644.28, which was the invoice

price of the entire property. The bill of sale recites the receipt of the consideration, but it was disclosed by the evidence that no consideration was in fact paid at the time, either in cash or cancellation of any indebtedness due from James to his son, Robert, but the plaintiff claims that he agreed with his father to pay the amount named in the bill of sale to such of his father's creditors as he (the plaintiff) might select, from the proceeds of the sale, so far as the money was received from the sale of the stock within the invoice price thereof. At the conclusion of all the evidence the defendant moved for the direction of a verdict, in substance, on the ground that the transaction was not a sale, but was an assignment, agency, or trust, and was fraudulent as to attaching creditors. The court denied the motion of the defendant, and thereupon the plaintiff moved for the direction of a verdict, on the ground that the undisputed evidence showed that the plaintiff was the owner of the property, and that he was entitled to a verdict therefor, which motion was granted. It is contended by the appellant that, on the testimony of the respondent and his father, appellant was entitled to a direction of a verdict for the reasons stated, and that under the evidence the plaintiff was not entitled to a direction of the verdict in his favor. It is undisputed that at the time of the alleged sale James Hall, the father, was indebted to Ferdinand Westheimer & Sons, the attaching creditors; that he was unable to pay his notes at the time the bill of sale was executed to his son, the respondent, and that no money or other consideration passed between the parties at the time of the sale.

On the trial the plaintiff, as a witness in his own behalf, testified as follows in answer to the interrogatories as to what he paid for the stock of goods, "We had an understanding that I was to pay off the indebtedness to the amount of the bill of sale, and I was to take the goods to pay $2,644.28 of his (James Hall's) indebtedness to the different business houses that he had been doing business with that he was indebted to. Ferdinand Westheimer & Sons was one of these houses. I have never paid their bill. That was the only consideration that passed between my father and myself for this stock of liquors. I paid several other bills that were due from my father to other creditors. I have not paid all of them. I paid

to the amount of the invoice as I took the money in and was able to. I don't just remember 'what the last date that I made payment was. But (it was when we had a settlement. I paid him in cash the balance that was due to Mr. Hall, my father. I paid him a balance in cash that was due on the fixtures and furniture, and like that. That was after the attachment 'was levied on the goods. * * * There was no agreement between my father and me as to what bills I would pay. I was not given a list of the bills. Only as these bills came in I was to pay what I could of them. The reason for my taking 'this business was the same as I would buy out any business I would think.' * * * I have no idea how much money my father owed at the time this stock was turned over, but I should judge that it was more than the amount of the goods invoiced. I was to pay up to that amount. * * * I don't know whether it is paid yet or not. I suppose these bills of Westheimer & Sons is not paid." James Hall, the father, called as a witness on the part of the plaintiff, testified as follows: "I don't know that the contract provided any form in which it should be paid. The understanding was at the time that I was owing for these goods a considerable more than they would cover, and that the proceeds of all liquors should be paid to the creditors direct as fast as the money could be collected, and as could be got out of the sale of the goods, and if it could not be gotten fast enough, if he [respondent] had any other money that was handy, he said he would pay it in there to pay up as fast as possible. That was the arrangement. The stock of liquors I think amounted to $1,400." On cross-examination he testified to the questions propounded to him as follows: "Q. Now, Mr. Hall, do you say the amount of liquors that 'were contained in this bill of sale were to be paid to creditors. I ask you what was to be done with the balance of the consideration? A. It was to be paid to creditors. It has all been paid to creditors. Q. Who paid the balance of it to them? A. I did. Q. When? A. At different times. My indebtedness at the time I sold out was something close to $4,000. Q. Now, Mr. Hall, you said that $1,700 of this was paid to creditors by you, did you? A. Yes, there was $1,700 of this that was paid to creditors by my son, and there is $175

that is no't 'on there. There is $275 that he paid that 's not in those checks. * * * The amount of liquors described in that bill of sale were to be paid to creditors direct by Bob to the liquor men. There was no part of that to go to any other creditors. I was not particular to tell him who they were, or what to pay. He was well acquainted with my trade, and he paid as he would, I presume, if it was his own business. He ought to use his own judgment. He was my agent. Q. He was your agent, was he? A. Yes. The entire consideration of $2,644.28 was to be used to pay debts. * * * The balance of it he paid to me, part of it. I don't know as there was any agreement as to that at the time of the sale. * * * It wasn't specified as to who he should pay it to. We had no particular specification as to that. He paid a portion of it to me, but he paid about $1,900 to those we are indebted to or that I was." The plaintiff further testified that out of the receipts from the sale of the stock of liquors he paid his father between $500 and $600. It will thus be seen that James Hall transferred this stock of goods to the respondent, and that no consideration was paid by the respondent therefor, either in money or by the cancellation of indebtedness, that no note or other memorandum in writing was executed by the respondent, and that the only agreement was the verbal one that he would pay the money as he received it on the sale of the goods to such creditors of his father as he might select.

It is the contention of the appellant that in the testimony of the respondent and his father alone, appellant was entitled to the direction of a verdict, for the reason that the transaction set out did not constitute a sale, nor an assignment for the benefit of his creditors, but was an agency or trust, and was fraudulent as to attaching creditors; that it is undisputed that at the time of the alleged sale James Hall was indebted to Ferdinand Westheimer & Sons, the attaching creditors, and that the indebtedness was past due and unpaid; that at the time the bill of sale was given no money or other consideration was paid for the same; that the respondent did not assume the indebtedness of his father, or make any agreement to pay any particular creditors, nor did he make any agreement with the creditors; that he was to manage the business "as if it was his own," and was his father's agent for the pur-

pose of carrying out the agreement. "A sale is a contract by which for a pecuniary consideration, called a 'price,' one transfers to another an interest in property." Section 1299, Rev. Civ. Code. It would seem that James Hall, the father, simply transferred the title to his son, Robert, so that he might close up the business, and pay the proceeds received from the sale of the goods to such creditors as he saw fit to pay, up to the invoice price of the goods named as consideration in the bill of sale. It is difficult, therefore, to say upon what theory this transaction can be sustained as a sale. The transaction seems to be more in the nature of a secret trust, by the terms of which James Hall, the father, was to receive such benefit only as resulted from the payment of his indebtedness, in such manner as his son, the respondent, might deem proper, and it appears from the evidence, that the son, after paying some $1,800 or $1,900 of his father's indebtedness, then paid over to his father the balance of the consideration money, amounting to between $500 and $600, notwithstanding that at the time the father, James Hall, admits that his indebtedness amounted to in the neighborhood of $4,000. Of course it cannot be claimed that the transaction was an assignment for the benefit of creditors, as such an assignment must be made in the manner specified in the Code, and under it there cannot be any preferences as to the creditors to be paid.

After a careful examination of the testimony there seems to be only one conclusion to be arrived at, and that is that James Hall, the father, by this purported sale placed his son, Robert, in charge of his business for the purpose of closing up and paying his debts and attempting thereby, to place his property in a situation where the creditors could not reach it and subject it to process to satisfy their claims. So far as James Hall, the father, was concerned he seems to have attempted to place himself in a position where a suit against him would be without avail, as he apparently had no assets. The creditors, however, could not sue Robert Hall, the son, for he had not assumed the indebtedness, and had made no agreement to pay any particular creditors of his father. If he therefore had refused to perform the agreement, his father could only have brought an action against him for enforcing the con-

ditions of the trust. Section 2368, Rev. Civ. Code, is as follows: "Every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any persons upon whom the estate of the debtor devolved in trust for the benefit of others than the debtor." It is quite clear, therefore, that this transaction or pretended sale was void as against the creditors of James Hall, in that it was evidently made with the intent to delay, if not to defraud, his creditors. Notwithstanding that, it is provided by section 2371: "In all cases arising under section 991, or under the provisions of this title, except as otherwise provided in section 2369, the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration," where, as in the case at bar both counsel virtually agreed that the facts are undisputed, the court may as a matter of law declare the legal effect of such undisputed facts by directing a verdict.

It seems to be well settled that an insolvent debtor will not be permitted to alienate his property and place it in a position where it is not subject to process in behalf of his creditors, unless there has been received a full and fair consideration for the property transferred, and the same has been made in good faith. Under section 2373, Rev. Civ. Code, "A debtor is insolvent, within the meaning of this title, when he is unable to pay his debts from his own means as they become due." It is quite clear from the evidence in this case that James Hall, the father, was unable to pay his indebtedness as the same became due in the usual course of business, and that he did not have ready means sufficient to pay the same. It is also quite clear from the evidence that the agent of Westheimer & Sons was pressing him for payment of the notes due from him to them. While this court has held that a debtor may convey his property to one or more of his creditors in payment of his indebtedness to them (Sandwich Mfg. Co. et al. v. Max et al., 5 S. D. 125, 58 N. W. 14, 24 L. R. A. 524), such debtor cannot dispose of his property to a third party, without consideration, and authorize him

to select such creditors as he might deem proper to apply the proceeds of his property in payment of their debts (Smith v. Conkwright et al., 28 Minn. 23, 8 N. W. 876; Switz v. Bruce, 16 Neb. 463, 20 N. W. 639; Newell v. Wagness, 1 N. D. 62, 44 N. W. 1014; Seger v. Thomas, 107 Mo. 635, 18 S. W. 33; Waggoner v. Cooley, 17 Ill. 239; Hill v. Mallory, 112 Mich. 387, 70 N. W. 1016; 20 Cyc. 585, note 9; Harvey v. Mix, 24 Conn. 406. In Smith v. Conkwright, supra, the learned Supreme Court of Minnesota, in a case quite analogous to the one at bar, held that: "A conveyance of real estate by a debtor, upon the understanding that the grantee should hold it in trust for the grantor, and that as fast as money could be realized therefrom it should be applied by the grantor to the payment of his debts, operates to hinder and delay creditors, and is void as against them." And in its opinion that court says: "A debtor's property is by law subject immediately to process issued at the instance of his creditor, and he may not lawfully delay the creditor by any device which leaves it virtually subject to his control and disposition. And it makes no difference that he intends ultimately to apply the avails of it to the payment of his debts because that leaves the time of payment, as well as the particular creditor to whom the avails shall be paid, to depend upon his will and pleasure. It is urged that a transfer by the debtor, which merely hinders and delays the creditor, is not necessarily unlawful. That may be true, but he cannot lawfully hinder or delay them by keeping the property, either in his own name or that of another. He may absolutely and irrevocably divest himself of the property by putting it in the hands of a trustee for the benefit of his creditors, and by so doing hinder and delay them while the trustee is administering his trust, but in that case the property beneficially belongs to the creditors, who need only wait for their own trustee to administer it." In Newell et al. v. Wagness et al., supra, the learned Supreme Court of North Dakota, in considering a case quite analogous to the one before us, says: "A sale of goods, in order to be considered as made bona fide with respect to creditors, must be made without any trust whatever, either express or implied. This is the doctrine of Twyne's Case, 3 Coke, 80 b, and we are not aware that the soundness of it has ever been questioned. It is not

permitted to a debtor to convey away his goods by sale with any secret understanding between him and the vendee that the goods shall be holden for the benefit of the vendor in any way whatever. The nature of the benefit reserved in the sale is immaterial. * * * All conveyances, with secret reservations for the benefit of the vendor, tend directly to hinder and delay creditors. They hold out false colors and false appearances, and mislead and deceive creditors. They give to the property of the vendor the appearance of belonging wholly to another, when in truth he has an interest in it concealed under the trust. It is for this reason that a trust of this kind is in law a fraud. As the obvious tendency of these reservations and trusts is to deceive and defraud creditors, it has not been deemed necessary to stop to inquire into the particular views or motives of individuals in each case; but all courts, relying on the presumption that every man intends the probable consequences of his acts, have at once pronounced all these trusts to be fraudulent, not only within the meaning of the 13 Eliz. c. 5, but at common law."

We are of the opinion that under the evidence in this case the court was not authorized to direct a verdict in favor of the plaintiff, but should have directed a verdict in favor of the defendant, and for this error of the court in directing a verdict in favor of the plaintiff, the judgment of the court below is reversed, and that court is directed to enter judgment in favor of the defendant.